**Harvey M. BURG, individually and on behalf of all others similarly situated, Plaintiff,**

**v.**

**James E. CANNIFFE et al., members of the Board of Registrars of the Town of Marblehead, Defendants.**

**Civ. A. No. 69–855–C.**

United States District Court, D. Massachusetts.

July 8, 1970.

Harvey M. Burg, Charles Gamer and Herbert Teitelbaum, Boston, Mass., for plaintiff.

Paul L. Lausier, Lynn, Mass., for Town of Marblehead.

Mark L. Cohen, Asst. Atty. Gen., Boston, Mass., for the Commonwealth.

Before McENTEE, Circuit Judge, CAFFREY and BOWNES, District Judges.

## OPINION

CAFFREY, District Judge.

This is a class action for injunctive and declaratory relief, brought pursuant to the provisions of 42 U.S.C.A. § 1983. Jurisdiction of the court is invoked on the basis of 28 U.S.C.A. § 1343(3); a statutory three-judge district court was convened pursuant to 28 U.S.C.A. § 2284. The complaint alleges that plaintiff seeks to act for himself and, also, pursuant to Rule 23, Federal Rules of Civil Procedure, for a class described as being composed of "any United States citizen otherwise qualified who has established residency in the Commonwealth, in the Town of Marblehead, the Sixth Congressional District, and is considered by the laws of the Commonwealth for purposes other than voting to be a resident of said Commonwealth."

The complaint was filed on August 13, 1969, thirteen days before a special primary election to be held on August 26, 1969 in the Sixth (Massachusetts) Congressional District. An order was entered by another judge of this court directing the defendants to supply to the clerk of this court a primary ballot, allowing plaintiff to mark the ballot on August 26 at the clerk's office, and directing the clerk to impound the ballot until further order of the court.

A hearing was held by the three-judge court on September 19, 1969, and a similar order, with reference to the ballot for the final election on September 30, 1969, was filed by the three-judge court on September 26. This order was premised on the then pendency in the Supreme Court of the United States of the case of Hall v. Beals, 396 U.S. 45, 90 S. Ct. 200, 24 L.Ed.2d 214 (1969). Subsequent to the filing of the opinion of the Court in Hall v. Beals, which dismissed that case for mootness, an evidentiary hearing was held herein on the merits.

The following facts are established for purposes of this case. Plaintiff is a citizen of the United States over twenty-one years of age, who moved from Alabama to Massachusetts on February 5, 1969, since which time he has been a resident of the Town of Marblehead. On August 5, 1969, six months after his taking up residence in Marblehead, he went to the Board of Registrars of Voters and attempted to register to vote in the then upcoming special congressional election. The Board, acting by its clerk, denied his request to register, solely on the basis of the fact that he had not resided within the Commonwealth for one year next preceding the election in which he sought to vote. The lack of one year's residence was the sole qualification for registration to vote not then possessed by plaintiff.

In refusing registration to Mr. Burg, the Board acted in reliance on and pursuant to the provisions of Massachusetts Constitution, Amend. Article III, and Mass. G.L., ch. 51, sec. 1, which sets forth the qualifications of voters. The Board will register a person who has lived in the town or district for six months provided that that person has lived somewhere in Massachusetts for the six months preceding his six months residence in the town or district, but will not register a person who has lived in the town six months if he has lived outside Massachusetts for any part of the six months next preceding his six months residence in the town or district.

Mass. Constitution, Amend., Article III, provides as follows:

"Every citizen of twenty-one years of age and upwards, excepting paupers and persons under guardianship and persons temporarily or permanently disqualified by law because of corrupt practices in respect to elections who shall have resided within the commonwealth one year, and within the town or district in which he may claim a right to vote, six calendar

months next preceding any election of governor, lieutenant governor, senators, or representatives, shall have a right to vote in such election of governor, lieutenant governor, senators and representatives; and no other person shall be entitled to vote in such election."

Mass. G.L., ch. 51, sec. 1, provides in pertinent part:

"* * * every citizen twenty-one years of age or older * * * who can read the constitution of the commonwealth in English and write his name, and who has resided in the commonwealth one year and in the city or town where he claims the right to vote six months last preceding a state, city or town election, and who has complied with the requirements of this chapter, may have his name entered on the list of voters in such city or town, and may vote therein in any such election * * *. No other person shall have his name entered upon the list of voters or have the right to vote; * * * "

The complaint alleges that the quoted provisions of the Massachusetts Constitution and the statute are violative of the United States Constitution, Article I, Sec. 2, cl. 1, and the First, Fifth and Fourteenth Amendments thereto. Plaintiff's principal contentions are that the operation and application of the State Constitution and laws amount to a denial of his rights under the equal protection clause and the due process clause of the Fourteenth Amendment. Alternatively, the complaint charges that the state voting requirements violate the right of interstate travel and restrain interstate commerce. The allegation is made that the state laws are invalid, both because "in no way based upon an adequate justifiable or compelling governmental interest," and because "in no way based upon any reasonable state constitutional or legislative classification."

The laws of the Commonwealth under attack herein establish what, in practical effect, amount to two consecutive durational residence requirements. Starting at the date of any congressional election, a would-be voter therein must first establish that for the six months immediately prior to the election he has been a resident of the town or district in which he claims the right to vote. Under the state law, the would-be voter must also prove to the Registrars of Voters that he has lived somewhere within the borders of the Commonwealth for an additional six-month period immediately prior to his six months residence within the town or district. The complaint alleges that the necessity for showing the additional six months residence within the state operates to deny equal protection of the laws to a person who lived outside the state in the period immediately prior to the six months he has resided in the town or district.

The requirements under the provisions of Mass. G.L., ch. 51, sec. 1, that a person in order to qualify as a voter be a citizen twenty-one years of age or older, who can read the Constitution of the Commonwealth in English, and write his name, and who has resided in the city or town where he claims a right to vote six months last preceding a state, city or town election, present no issue for determination herein. This is because plaintiff met all of these qualifications when he sought to register to vote with the Marblehead Board of Registrars, and because this first of the two consecutive six-month residency requirements in a city or town or district applies equally to persons who have lived all their lives within the borders of the Commonwealth and who have moved intrastate, as well as to persons who have moved interstate from some point outside the Commonwealth.

The issue for decision here is whether or not the additional requirement contained in Chapter 51, sec. 1, that in order to be qualified to vote a person must also have resided in the Commonwealth one year last preceding a state, city or town election, offends the equal protection clause of the Fourteenth Amendment. It is clear from the

stipulated facts that this durational residence requirement of one year within the state operated to deprive plaintiff of the opportunity to vote in the special congressional election, thus casting a burden on the state to justify the validity thereof. The Supreme Court of the United States has made the observation in Lassiter v. Northampton Election Bd., 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959), (at 50–51, 79 S.Ct. at 989):

> "The States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised * * * absent of course the discrimination which the Constitution condemns * * *
>
> "There is wide scope for exercise of its jurisdiction. Residence requirements, age, previous criminal record * * * are obvious examples indicating factors which a State may take into consideration in determining the qualifications of voters. The ability to read and write likewise has some relation to standards designed to promote intelligent use of the ballot."

and in Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904), the Supreme Court told us (at 632, 24 S.Ct. at 575):

> "* * * the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals, in violation of the Federal Constitution."

In Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), the Supreme Court said (at 96, 85 S.Ct. at 780):

> "We deal here with matters close to the core of our constitutional system. 'The right * * * to choose,' United States v. Classic, 313 U.S. 299, 314, 61 S.Ct. 1031, 1037, 85 L.Ed. 1368, that this Court has been so zealous to protect, means, at the least, that States may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the State."

The Supreme Court has likewise told us, in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), (at 561–562, 84 S.Ct. at 1381):

> "The right to vote is personal * * *. Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society * * * Since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized. Almost a century ago, in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, the Court referred to 'the political franchise of voting' and 'a fundamental political right, because preservative of all rights.' 118 U.S., at 370, 6 S.Ct. 1064."

The major issue for resolution herein is to determine the yardstick by which the Massachusetts statute under attack must be "meticulously scrutinized" by this court. The defendants contend that the test that should be applied to resolve whether or not the equal protection clause has been violated is the so-called "rational legislative purpose" test used in a series of Supreme Court decisions which have examined attacks on state legislation under the equal protection clause of the Fourteenth Amendment, such as Lindsley v. Natural Carbonic Gas, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911); Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); and McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The defendants place particular reliance on the fact that as recently as 1965 the Supreme Court affirmed, per curiam, 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792, the decision of a statutory three-judge district court reported under the name of Drueding v. Devlin, 234 F. Supp. 721 (D.Md.1964), which had upheld the validity of Maryland's durational residence requirements, substantially

identical to Chapter 51 of the Mass. General Laws, by applying the test of whether or not the statutes were "so unreasonable that they amount to an irrational or unreasonable discrimination." (Id. 725.)

Plaintiff, on the other hand, urges that *Drueding* is no longer a viable decision of the Supreme Court in the light of a number of subsequent decisions, particularly Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); and Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). *Kramer* and *Cipriano* both involve elections and in both cases the Supreme Court indicated that because of the importance of the right to vote, the fact that a state statute discriminating against some portion of a state's electorate serves a rational state purpose, or can be shown to have a "rational basis," no longer will suffice to sustain its validity in the face of a claimed violation of the equal protection clause. The rule was thus enunciated in *Kramer*, (395 U.S. at 627, 89 S.Ct. at 1890):

"* * * if a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest."

The Court likewise instructed that when a court seeks to determine the existence *vel non* of a compelling state interest it must "give the statute a close and exacting examination," and also noted that "any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." (395 U.S., at 626, 89 S.Ct. at 1889.)

The reason why this close scrutiny is required was stated by the Court to be (at 626–627, 89 S.Ct. at 1889):

"Statutes granting the franchise to residents on a selective basis always pose the danger of denying some citizens any effective voice in the governmental affairs which substantially affect their lives."

In *Cipriano, supra,* another voting case decided the same day as *Kramer,* the Court observed (395 U.S. at 704, 89 S.Ct. at 1899):

"If a challenged state statute grants the right to vote in a limited purpose election to some otherwise qualified voters and denies it to others, 'the Court must determine whether the exclusions are necessary to promote a compelling state interest.'"

This court notes that in Shapiro v. Thompson, *supra,* the Court, in deciding whether or not durational residence requirements in the context of a welfare case offended the equal protection clause, specifically rejected (394 U.S. at 634, 89 S.Ct. at 1331) the rationale of three of its former decisions, Lindsley v. Natural Carbonic Gas, Flemming v. Nestor, and McGowan v. Maryland, *supra,* each of which had used the rational legislative basis test, and embraced as the appropriate test the following:

"* * * any classification which serves to penalize the exercise of that right [interstate movement], unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." 394 U.S., at 634, 89 S.Ct. at 1331.

The Court then cited with approval Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), which also had used the test, (at 406, 83 S.Ct. at 1795):

"whether some compelling state interest enforced in the eligibility provisions of the South Carolina statute justifies the substantial infringement of appellant's First Amendment right. It is basic that no showing merely of a rational relationship to some colorable state interest would suffice * * *;"

and Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960),

which used the test, (at 524, 80 S.Ct. 412, 417):

"Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling;"

and Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944), where essentially the same test was applied in somewhat different wording, (at 216, 65 S.Ct. at 194):

"* * * all legal restrictions which curtail the civil rights of a single racial group are immediately suspect. That is not to say that all such restrictions are unconstitutional. It is to say that courts must subject them to the most rigid scrutiny. Pressing public necessity may sometimes justify the existence of such restrictions; * * *"

This court's research indicates that the Supreme Court has also discussed the use of the "compelling state interest" test in McDonald v. Bd. of Election, 394 U.S. 802, 806, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); in Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); and in N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

Any lingering doubts that the compelling interest test must be used in determining the validity of state voting statutes attacked on equal protection grounds would appear to be permanently put to rest by two decisions of the Supreme Court handed down within the fortnight, on June 15, 1970 in Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370, and on June 23, 1970 in City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523. Both of these were voting cases in which a state statute selectively distributing the franchise was attacked on equal protection grounds. The Supreme Court used the compelling state interest yardstick to invalidate the state statute involved.

At the trial of the instant case, the defendants relied on the presumption of constitutional validity and offered no evidence. Consequently, there is nothing before this court on the basis of which any ruling can be made that the second six months of the one-year durational residence requirement contained in Mass. G.L., ch. 51, sec. 1, serves to promote any compelling state interest.

This court is aware that states have a legitimate interest in requiring their voters to establish that they have satisfied a durational residence requirement of some length. Such a requirement may well serve to protect the state against fraud, to insure the so-called "purity" of the electorate, to insure that the voters have at least a minimum of interest in the community and its affairs, and to provide a better informed electorate. Additionally, considerations of an administrative nature may require a time period to allow for the paper work involved in registering new voters and in establishing a time for closing voting lists prior to any given election. Time is required to allow voting officials to determine the number of registered voters, the number of ballots that must be provided, and to enter into contracts for the printing of the requisite number of ballots. It should be noted in this context that Mass. G.L., ch. 51, sec. 1A, allows persons to register and vote in a presidential election if they have lived in the state for thirty-one days next preceding the date of election.

Having these considerations in mind, we rule today only that the additional six-month requirement next preceding a congressional election operates as a violation of the Equal Protection Clause of the Fourteenth Amendment, as to a person who has moved from outside the Commonwealth into Massachusetts between six months and one year next preceding the given election. We are not persuaded that any compelling state interest is served by singling out interstate movers as a class of persons for whom an additional six months residence is mandatory.

This ruling does not invalidate all of the durational residence requirement

contained in Mass. G.L., ch. 51, sec. 1, but only so much of that requirement as exceeds a period of six months. The constitutionally impermissible requirement contained in the phrase "within the commonwealth one year and," which is easily severable from the remainder of Chapter 51, sec. 1, is the portion we hold violative of the Equal Protection Clause. We intimate no opinion as to whether any other durational residence requirement short of twelve months may be found to serve a compelling state interest.

Judgment may enter in favor of the plaintiff and all others similarly situated declaring the residency requirements of Mass.Const., Amend. Art. III, and M.G.L. ch. 51, § 1, invalid insofar as they require an additional six months' residency in the state beyond the period of six months in the district in Congressional elections; enjoining defendants from denying plaintiff and all others similarly situated the right to vote in Congressional elections, and enjoining defendants from refusing to count the election ballots marked by the plaintiff and held by the Clerk of this court.

Order accordingly.