**Don AFFELDT and Cordell Affeldt**

**v.**

**Edgar D. WHITCOMB et al.**

**Civ. No. 70 H 220.**

United States District Court,
N. D. Indiana,
Hammond Division.

Oct. 20, 1970.

R. Dennis Hoover, Valparaiso, Ind., for plaintiffs.

Roger Claudon, Valparaiso, Ind., for defendants John Ruge, John Lyons, and John Howell.

Scott Miller and William Lett, Indianapolis, Ind., for State Officials.

Before KILEY, Circuit Judge, and BEAMER and ESCHBACH, District Judges.

## MEMORANDUM OF DECISION AND JUDGMENT ORDER

ESCHBACH, District Judge.

This is alleged to be a class action, challenging the constitutionality of the Indiana six-month durational residence requirement for voting, filed on September 25, 1970. Plaintiffs pray for injunctive relief pursuant to 28 U.S.C. § 2202, 42 U.S.C. § 1983, and 28 U.S.C. § 1343(3) and for declaratory relief pursuant to 28 U.S.C. § 2201. A statutory three-judge district court was convened pursuant to 28 U.S.C. § 2284. This order contains the findings of fact and conclusions of law of the court after hearing evidence on October 13, 1970.

We grant the relief prayed for, but limit it to the named plaintiffs.

Having brought this action by way of a class action under Rule 23 of the Federal Rules of Civil Procedure, plaintiffs define the class which they seek to represent as "those residents of the State of Indiana who will have lived in the State for less than six months on the day of the next following general or city election." In other words, plaintiffs seek relief only on behalf of interstate movers who will have lived in Indiana for less than six months on the day of the next following general or city election.

The facts of this case can be summarized as follows. Plaintiffs, Don Affeldt and Cordell Affeldt, arrived and moved into their present residence in Valparaiso, Indiana, on May 29, 1970. Don Affeldt had previously executed his employment contract with Valparaiso University in April 1970, agreeing to begin teaching on September 1, 1970. Cordell Affeldt also executed a teaching contract with Duneland School Corporation of Chesterton, Indiana, in April 1970 and agreed to begin teaching on August 28, 1970. Don Affeldt is presently an assistant professor of law and philosophy at Valparaiso University, and Cordell Affeldt is a fifth grade teacher. Defendants include the following officials: Edgar D. Whitcomb, Governor of Indiana; Theodore Sendak, Attorney General of Indiana; John B. King[1] and Thurman M. DeMoss, members of the Indiana State Election Board; John W. Ruge clerk of the circuit court of Porter County, Indiana, and ex officio registration officer of that county; and John M. Lyons and John H. Howell, members of the Porter County Election Board.

Plaintiff Don Affeldt went to the office of defendant Ruge on September 18, 1970 and asked to be permitted to register to vote in the upcoming general election on November 3, 1970. Since plaintiffs arrived in Valparaiso on May 29, 1970 and would therefore not meet the six-month durational residence period required by Ind.Stat.Ann. § 29–3426 (Burns' Repl.1969) and Ind.Const. art. 2, § 2 in order for an Indiana resident to be qualified to vote, defendant Ruge refused to allow Don Affeldt to register. Ruge further explained that the six-month requirement applied to elections for United States Senate and House of Representatives as well as for state and local elections. Finally, Ruge told Affeldt that there was no provision for appealing his decision. A similar meeting between Ruge and plaintiff Cordell Affeldt took place on September 21, 1970. Other than the six months durational residency requirement, plaintiffs have apparently met all other qualifications in order to vote in the upcoming election.

Plaintiffs next requested by letter dated September 21, 1970 that a hearing be conducted before the Porter County Election Board; a hearing was held on September 24, 1970 pursuant to their request but in their absence, and the Board determined that it had no jurisdiction to review Ruge's decision. The Board also ruled that since Ind.Stat.Ann. § 29–3401 (Burns' Repl.1969) provides that it is unlawful for any person to vote at any general election in Indiana unless he is a registered voter at the time of such election, the Board would allow plaintiffs to vote only under court order. Plaintiffs have therefore exhausted their administrative remedies.

It is plaintiffs' contention that the six months durational residence requirement of § 29–3426 and Ind.Const. art. 2, § 2 violates their freedom to travel, freedom of political association, and right to vote for United States Senator and Representative; in addition, plaintiffs contend that they have been denied due process of law, equal protection of the laws, and privileges and immunities as citizens of the United States as guaranteed by the Fourteenth Amendment. The Indiana

---

1. Defendant King replaced Edwin K. Steers on the Board. Defendants' motion to substitute defendants was granted on October 13, 1970.

Constitution provides for qualifications of electors as follows:

> In all elections not otherwise provided for by this Constitution, every citizen of the United States, of the age of twenty-one years and upwards, *who shall have resided in the State during the six months,* and in the township sixty days, and in the ward or precinct thirty days immediately preceding such election, shall be entitled to vote. * * * Ind.Const. art. 2, § 2. (Emphasis added.)

Ind.Stat.Ann. § 29–3426 (Burns' Repl. 1969) provides in part that:

> Every person who will be at least twenty-one [21] years of age at the next ensuing general or city election, who is a citizen of the United States, who, if he continues to reside in the precinct until the next following general or city election, will at that time, *have resided in the state of Indiana six [6] months,* in the township sixty [60] days and the precinct thirty [30] days, shall be entitled, upon proper application, to be registered in such precinct. (Emphasis added.)

Plaintiffs contend that Indiana may not discriminate against residents who are recent arrivals from outside Indiana. While plaintiffs state that they do not challenge the right of Indiana to establish reasonable standards of residence,[2] they do contest its right to establish in the above statutory and constitutional provisions a six-month durational residence requirement which cannot be shown to achieve any of the objectives purportedly furthered by such a requirement. Plaintiffs describe Indiana's six-month durational residence requirement as an "irrebuttable presumption of ineligibility."

By way of relief, plaintiffs seek the following:

(1) A preliminary injunction requiring that the offices of all Indiana county voter registration boards and their registration books remain open until October 25, 1970 or for any other reasonable period deemed appropriate. Such relief would allegedly enable plaintiffs and those in the class to register. Defendants would also be required to publish a notice of the extension.

(2) A declaratory judgment invalidating the six-month waiting requirement for voter registration in Indiana.

(3) A permanent injunction restraining enforcement of Indiana's six-month waiting requirement.

Defendants contend that as an administrative body created merely to perform the functions of supervising elections and administering election laws, they have no power to conduct an election in any manner other than as provided by Indiana election laws. Defendants also attack as intentional and negligent the period which elapsed between the time when plaintiffs moved to Valparaiso and the time when plaintiffs attempted to register and filed this action. Finally, defendants submit that hardship and an undue burden on the administration of an orderly election will result if a restraining order or injunction is granted.

The state defendants' motion to dismiss the complaint, filed October 13, 1970, on the grounds that plaintiffs failed to state a claim upon which relief may be granted and that the court lacked subject matter jurisdiction is denied. However, by stipulation of the parties, the motion to dismiss stands as an answer to the complaint on behalf of all defendants, and all defendants waived further pleadings. In their motion, defendants set forth the following contentions:

(1) The right to vote is not a fundamental right, and thus the test by which to measure Indiana's six-month requirement is the "rational legislative purpose" test.

---

2. Plaintiffs have complied with and do not attack the durational residence requirements to vote of sixty days in the township and thirty days in the ward or precinct as contained in Ind.Const. art. 2, § 2 and Ind.Stat.Ann. § 29–3426 (Burns' Repl. 1969).

(2) The Constitution requires that the qualifications of electors for United States Senator and Representative be the same as those for state representative; therefore, the rationale for the six-month requirement with regard to state representative is applicable to United States Senator and Representative.

(3) Indiana has a "compelling interest" in the requirement in order to insure a well-informed electorate, to denote a particular time interval, to prevent fraud, to prevent "absurd results," to protect the qualification requirements for candidacy, and to administer elections.

(4) Plaintiffs deserve no remedy because of the lateness of this action.

(5) The authorities cited by plaintiffs are distinguishable from this case.

The vital question here presented is whether Indiana's six months durational residence requirement for voting in the upcoming *general* election as applied to interstate movers is constitutional under the equal protection clause. This action consequently presents a broader question regarding durational residency requirements than those cases now scheduled for hearing before the Supreme Court during the week of October 19, 1970.[3] Those cases deal with the constitutionality of the Voting Rights Act Amendments of 1970, 42 U.S.C. § 1973c. Under those amendments, only durational residency requirements as a precondition to voting for the offices of President and Vice President are abolished.

 Although Indiana unquestionably has the power to impose reasonable residence restrictions on the availability of the ballot, Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904), that power does not encompass the imposition of standards which are discriminatory and inconsistent with the equal protection clause of the Fourteenth Amendment. Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 666, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (Virginia poll tax as precondition for voting held violative of equal protection clause); Carrington v. Rash, 380 U.S. 89, 91, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) (Texas restriction prohibiting member of Armed Forces who moved to Texas during military duty from voting in any election in Texas as long as a member of the Armed Forces held unconstitutional). The right to vote has been held to be close to the core of our constitutional system and a fundamental right of every citizen. *Carrington, supra* at 95, 89 S.Ct. 775.

Since the present action involves the right to vote in a free and unimpaired manner—a right preservative of other civil and political rights—this court must "carefully and meticulously scrutinize" plaintiffs' contention that their right to vote has been infringed. *Harper, supra* 383 U.S. at 667, 86 S.Ct. at 1082. Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The Court in Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L. Ed.2d 583 (1969) stated that such a careful examination is compelled by the fact that statutes distributing the franchise constitute the foundation of our representative society. *Kramer, supra* at 626–627, 89 S.Ct. 1886 (state statute held unconstitutional which denied school district residents, otherwise eligible to vote in state and federal elections, the right to vote in school district elections unless owners or lessees of taxable real property within the district or parents of children enrolled in local public schools). "Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." *Kramer, supra* at 626, 89 S.Ct. at 1889. As a result, a careful examination must be made regarding Indiana's six-month durational residency requirement which flatly

3. Oregon v. Mitchell, 399 U.S. 802, 91 S.Ct. 9, 27 L.Ed.2d 33; Texas v. Mitchell, 399 U.S. 802, 91 S.Ct. 9, 27 L.Ed.2d 33; United States v. Arizona, 399 U.S. 802, 91 S.Ct. 9, 27 L.Ed.2d 34; United States v. Idaho, 399 U.S. 802, 91 S.Ct. 9, 27 L.Ed.2d 34.

denies the right to vote to those who are otherwise qualified to vote, such as plaintiffs.

■ The standard by which the six months durational residence requirement must be scrutinized is the so-called "compelling interest" test. City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); [4] Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); [5] Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); [6] Kramer, supra 395 U.S. at 627, 89 S.Ct. 1886; Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); [7] Blumstein v. Ellington, Civil No. 5815, M.D.Tenn., August 31, 1970; [8] Burg v. Canniffe, 315 F.Supp. 380, D. Mass., 1970. [9] The compelling interest standard is an exception to the long-established rule that a statute does not deny equal protection if rationally related to a legitimate governmental objective. Shapiro, supra 394 U.S. at 658,

89 S.Ct. 1322 (J. Harlan, J., dissenting). The standard by which a residency requirement was formerly measured was whether the restriction bore some reasonable relationship to a legitimate end, as used in Drueding v. Devlin, 380 U.S. 125, 85 S.Ct. 807 (1965), affirming per curiam 234 F.Supp. 721 (D.Md.1964) (provisions of Maryland Constitution and statutes did not unreasonably discriminate, which prohibited resident from voting in election for President unless resident resided in the state for one year and in the county for six months). We think Drueding is no longer good law since the residency requirements were upheld on the basis of the former standard in voting cases—whether the provision unreasonably discriminated against any class of persons. Hall, supra 90 S.Ct. at 203 (T. Marshall, J., dissenting).

The compelling interest test can be stated simply as follows: whether the exclusion is necessary to promote a com-

---

4. An Arizona statute was held to be a denial of equal protection which restricted to real property taxpayers the right to vote in elections for approval of the issuance of general obligation bonds. The Court thus applied the "compelling interest" test to an election other than for the election of public officials.

5. In Cipriano, the Court struck down a Louisiana law giving only property taxpayers the right to vote in elections for the approval of issuance of revenue bonds by municipal utilities.

6. The district court in Hall v. Beals, 292 F.Supp. 610 (D.Colo.1968) dismissed an action seeking to enjoin the enforcement of a state statute which prohibited a resident from voting in elections for the President and Vice President unless such resident had resided within the state for a period of not less than six months next preceding the election. The district court used the standard of whether the requirement was so unreasonable as to amount to a prohibited discrimination under the equal protection clause, citing Drueding v. Devlin, 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792 (1965), as authority. Hall, supra 292 F.Supp. at 614.

After plaintiffs took a direct appeal to the Supreme Court, the Colorado legislature reduced the requirement to two months. Reviewing the judgment of the district court in light of the two-month statute, the Court found that plaintiffs could have voted in the election under such a requirement and dismissed the action as moot. Hall, supra, 90 S.Ct. 200.

7. In Shapiro, a state or District of Columbia statutory provision denying welfare assistance to residents of the state or District who had not resided within their jurisdictions for at least one year immediately preceding their applications for assistance was held unconstitutional.

8. The district court struck down a three-month and a one year durational residence requirement on voting and voter registration contained in the constitution and statutes of Tennessee. Plaintiff in Blumstein, like plaintiffs in this action, moved into the state to assume a teaching position and was denied the right to vote for failure to meet the state's residency requirements. In order to register, Blumstein had to have been a resident of the county in which he sought to vote for three months next preceding the election and a resident of the state for the one-year period next preceding the election. Blumstein attacked both requirements which were struck down.

9. See p. 77, 78, infra.

pelling state need. *Kramer, supra* 395 U.S. at 630, 89 S.Ct. 1886. The Court in *Shapiro, supra* 394 U.S. at 634, 89 S.Ct. 1322, utilized the compelling interest standard in testing a state durational residence requirement for welfare assistance, expressly rejecting the "rational relationship" standard insofar as the right of interstate movement was concerned. Any classification which served to penalize the exercise of the right to move from state to state was held to be unconstitutional unless necessary to promote a compelling governmental interest. *Shapiro, supra.* The Court, however, refused to imply any view of the validity of such requirements as applied to the right to vote. *Shapiro, supra* 394 U.S. at 638 n. 21, 89 S.Ct. 1322.

After *Kramer, supra,* and *Cipriano, supra,* the standard to be applied to voting statutes which grant the franchise to residents on a selective basis is clear:

Statutes granting the franchise to residents on a selective basis always pose the danger of denying some citizens any effective voice in the governmental affairs which substantially affect their lives. Therefore, if a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest. *Kramer, supra* 395 U.S. at 626–627, 89 S.Ct. at 1889–1890. (Footnote omitted.)

On the basis of the holdings in *Kramer, supra,* and *Harper, supra,* Justice Marshall, dissenting in *Hall, supra,* restated the compelling interest test with regard to the right to vote:

[I]t is clear now that once a State has determined that a decision is to be made by popular vote, it may exclude persons from the franchise only upon a showing of a compelling interest, and even then only when the exclusion is the least restrictive method of achiev-

ing the desired purpose. *Hall, supra* 90 S.Ct. at 203–204.

The compelling interest doctrine has two branches: (1) that branch which requires classifications based upon "suspect" criteria, such as race and wealth, to be supported by a compelling interest and (2) that branch which requires statutory classifications affecting a fundamental right to be supported by a compelling interest regardless of the basis of the classification. *Shapiro, supra* 394 U.S. at 658–661, 89 S.Ct. 1322 (J. Harlan, J., dissenting). According to such a dichotomy, the present action would belong to the second branch, the right to vote being the fundamental right affected. Although plaintiffs also contend that the six months durational residence requirement violates their right to travel from state to state, the courts have not struck down durational residence requirements for voting on that basis. *See, e. g., Cipriano, supra; Kramer, supra; Harper, supra; Blumstein, supra; Burg, supra.* Although the Court in *Shapiro, supra,* held that welfare residence requirements were penalties on the right of travel, it refused to imply any view of the validity of such requirements as related to the right to vote. *Shapiro, supra* 394 U.S. at 638, n. 21, 89 S.Ct. 1322. If "penalty" connotes deterrence, it is doubtful whether Indiana's six months residency requirement for voting would deter the exercise of the right of travel. On the other hand, it has been suggested that if the nature of the deprivation determines whether a penalty on the right to travel exists, then a six-month residence requirement such as Indiana's depriving a citizen of the fundamental right to vote would constitute a penalty. Note, Residence Requirements for Voting in Presidential Elections, 37 U.Chi.L.Rev. 359 (1970).

In applying the compelling interest test to the present action, two different inquiries must be made:

(1) Whether Indiana's interests underlying the six months durational residence requirement are compelling.

(2) Whether the means chosen by Indiana to achieve those interests are necessary.

Two principal interests are presented by Indiana as underlying the six months durational residence requirement; those interests include (1) the preservation of the purity· of elections and the orderly administration of elections and (2) promotion of an "enlightened electorate."

In general, state residency requirement laws concerning voting have reflected two fundamental assumptions which were especially important in nineteenth century America. First, liberal democracy, while presupposing the accessibility of voting facilities, required that adequate safeguards be devised to inhibit corruption of elections. Harsh nineteenth century experience with "floaters" and the organized voting of transients continues to influence strongly the development of residency provisions relating to the exercise of suffrage. * * * Secondly, state residency requirements for voting reflect nineteenth century conceptions of federalism which, in practical effect, embody state dominance of the voting process regardless of whether the offices to be filled are national, state or local. A rationale which has often been invoked to reinforce arguments for state control of voter registration requirements is the notion that a voter should have roots in the community of sufficient permanence to insure adequate familiarity with local candidates and issues. This concept of the "enlightened" voter has relevance for state and local elections, but has been subjected to increasing criticism because it is not germane to presidential elections. Schmidhauser, Residency Requirements for Voting and the Tensions of a Mobile Society, 61 Mich.L.Rev. 823, 828 (1963). (Footnotes omitted.)

 Admittedly, Indiana does have a legitimate interest in promoting purity of elections and orderly elections which for purposes of the compelling interest test could well be labelled "compelling." Assuming arguendo that such an interest is compelling, the means by which Indiana attempts to protect that interest cannot be deemed "necessary" so as to satisfy the compelling interest test. *Blumstein, supra.* Although *Shapiro, supra,* involved state durational residence requirements as related to welfare assistance and not the right to vote, some of the interests which the state allegedly sought to protect duplicate interests allegedly underlying Indiana's and other states' durational residence requirements to vote. In *Shapiro,* for example, defendants sought to justify the waiting period as a protective device to facilitate the planning of the welfare budget, to minimize the opportunity for welfare recipients fraudulently to receive payments from more than one jurisdiction, and to preserve the fiscal integrity of the program. Furthermore, the requirement allegedly eased administrative problems by providing an objective test of residency. *Shapiro, supra* 394 U.S. at 634, 89 S.Ct. 1322.

Despite the validity of those interests, the Court held in *Shapiro* that there was simply no basis for the claim that the one-year residency requirement served the purpose of making the welfare budget more predictable. Nor was there any need for the state to use the requirement as a safeguard against fraudulent receipt of benefits; instead, less drastic means of accomplishing those objectives by the state were available. *Shapiro, supra* 394 U.S. at 634–637, 89 S.Ct. 1322.

The presumption which Indiana imposes with its six months durational residence requirement for voting is absolutely conclusive and thus arguably an administrative aid since easily applied and objective. Plaintiffs have been unable to overcome the presumption even with proof of the most positive nature presented to the county voter registration officer. The right to vote may not be deprived casually by Indiana to a class merely because of some remote administrative benefit. *See Carrington,· supra* 380 U.S. at 96, 85 S.Ct. 775. The

effect of the six-month requirement is to create two classes of residents—those who have resided in the state for more than six months and those who have not. In *Shapiro, supra,* the Court found no basis for the presumption by the state that every applicant for assistance in his first year of residence had come to the state solely to obtain higher benefits. Similarly, the class of barred newcomers in this action is all-inclusive; bona fide residents are lumped together with those who might have come to Indiana only to vote and work fraud on the election.

In addition, the six-month requirement is for all practical purposes no guarantee of a "pure" election since the qualifications of an Indiana voter are established by oath at the time of registration which may take place up to and including the twenty-ninth day before the election. Ind.Stat.Ann. §§ 29–3407, 29–3412 (Burns' Supp.1970). A non-resident who wants to vote can falsely swear that he is an Indiana resident; in short, a six-month residency requirement as presently administered in Indiana adds no real protection against dual voting or colonization. *See Hall, supra* 90 S.Ct. at 205 (T. Marshall, J., dissenting). Fraud could be prevented by other means less drastic than the denial of the right to vote due to failure to meet the six months durational residence requirement; for example, a certification from a new resident's former election district to insure that the new voter has not retained registration in his former district may be "necessary" under the compelling interest test. Indiana's six-month requirement imposes an overbroad burden upon the right to vote. *See Hall, supra* 90 S.Ct. at 205 (T. Marshall, J., dissenting). *Also see Carrington, supra* 380 U.S. at 96, 85 S.Ct. 775.

With regard to the state's interest in an "enlightened electorate," the state does have a greater interest in attempting to have an electorate which is knowledgeable of local and state issues in a general election than would be present if plaintiffs sought only to vote for President and Vice President. The argument that a six months durational residency requirement insures that voters have had the opportunity to become acquainted with local issues has little persuasion in relation to voting for President and Vice President since local issues play such a small part therein. *Hall, supra* 90 S.Ct. at 204 (T. Marshall, J., dissenting).

On the other hand, it is not sufficient to justify the six-month requirement by an alleged need on the part of the state to indoctrinate or impress upon newcomers the local viewpoint. *Hall, supra* 90 S.Ct. at 204 (T. Marshall, J., dissenting); *Carrington, supra* 380 U.S. at 94, 85 S.Ct. 775. Nor is it permissible for a state to "fence out" from the franchise a sector of the population because of the way it may vote. *Carrington, supra* 380 U.S. at 94, 85 S.Ct. 775.

Assuming arguendo that the state's interest in insuring that the electorate is "enlightened" is compelling and that Indiana legitimately may limit the franchise to those residents who are familiar with local issues in a general election, a close scrutiny of the six-month requirement reveals that such an objective is not accomplished with "sufficient precision" to justify denying plaintiffs in this case the right to vote. *See Kramer, supra* 395 U.S. at 632, 89 S.Ct. 1886. The very basis of the interest itself—the assumption that residents who have lived in the state for more than six months are better informed about the issues and candidates in the upcoming election than a person who has lived in the state for less than six months—is subject to criticism in light of modern communication methods. In any event, we see no merit to the claim that a six-month residence requirement is a *sine qua non* for enlightenment of voters.

In *Burg, supra,* a class action was brought to strike down a Massachusetts durational residence requirement providing that a person had to reside within the state one year last preceding an election. Massachusetts in effect had two consecutive durational requirements, since

a would-be voter also had to establish that he had been a resident of the town or district in which he claimed the right to vote for the six months immediately prior to the election. *Burg, supra* 315 F.Supp. at 382. Plaintiff had moved from Alabama to Massachusetts and lacked only the one year's residence in order to vote. The court, using the compelling interest test, ruled only that the one-year requirement next preceding a congressional election operated as a violation of the equal protection clause as to a person moving interstate between six months and one year next preceding the election. The court further found that no compelling state interest, such as administrative needs, prevention of fraud, a knowledgeable electorate, or interest of voters in the community, was served by singling out interstate movers as a class for whom an additional six months residence was mandatory. *Burg, supra* 315 F.Supp. at 385.

Plaintiffs have not attacked the Indiana statute providing for registration up to and including the twenty-ninth day before the election. Ind.Stat.Ann. § 3412 (Burns' Supp.1970). Indiana has an interest, not disputed by plaintiffs in this action, in closing registration at that time in order to prepare for an election. Although this court is striking down the six months durational residence requirement, the twenty-nine day requirement for registration is still valid and unaffected. No one in the class which plaintiffs seek to represent has registered or would be able to satisfy at this time the twenty-nine day requirement for registration. In addition, if relief were granted to the class, such class would only include those would-be voters who attempted to register in Porter County and who were turned down solely because of the six months durational residence requirement; the registration officer of only

Porter County was named in the complaint as a defendant. Since no records were kept of those would-be voters who attempted to register, a determination of persons comprising the class would be difficult, if not impossible, in a short time period. To allow at a time so close to the upcoming election an undetermined class to register would unduly delay the preparation of voting lists for the precincts and work havoc on an orderly election process. The named plaintiffs may register because of their previous good faith effort to register, which has been established by the evidence in this case, but to permit any such relief to a class at this late date would unreasonably disrupt the November 3, 1970, election procedures.

The cases cited herein are clear indications of the greater interest shown by the courts during the past decade in a long-standing problem, the disenfranchisement of interstate movers.[10] Increasing mobility in this century, coupled with durational residence requirements for voting, have created a new class of disenfranchised Americans which is not insignificant. One study by the American Heritage Foundation has shown that in 1960 there were approximately 104,000,000 adult citizens who were of voting age at the time of the November elections. Of these, the Foundation estimated that 8,000,000 were mobile adults unable to meet state, county, or precinct residency requirements set by state statutes. The impact of the residency requirements falls upon those seeking advancement in a new community such as educators, lawyers, clergymen, and business executives. Disenfranchisement may have a greater effect upon nonprofessionals such as those who must move constantly because of occupational necessity. In addition, technological changes have forced mobility on skilled

10. Also see Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970) (denial of vote to persons living on grounds of federal enclave in Maryland for failure to satisfy Maryland residence requirement violated equal protection of laws).

and unskilled laborers. *Schmidhauser, supra* at 829–30.

Therefore, this court holds that Indiana's six-month durational residence requirement, provided for by Ind.Stat.Ann. § 29–3426 (Burns' Repl.1969) and Ind. Const. art. 2, § 2, infringes plaintiffs' fundamental right to vote and constitutes a violation of the equal protection clause of the Fourteenth Amendment. Although plaintiffs seek relief both on behalf of themselves and the named class, the court finds that it is unnecessary to determine this case as a class action or the propriety of a class action in this instance because of the remedy granted under the unusual circumstances here presented.

## JUDGMENT ORDER

For the foregoing reasons, and upon the findings of fact and conclusions hereinabove set forth:

1. It is considered, ordered, adjudged and declared that the six months durational residence requirement to vote as contained in Ind.Stat.Ann. § 29–3426 (Burns' Repl.1969) and Ind.Const. art. 2 § 2 is unconstitutional and invalid.

2. It is further considered, ordered and decreed that the defendants, their agents and employees are restrained and enjoined from enforcing the six months durational residence requirement to vote as contained in Ind.Stat.Ann. § 29–3429 (Burns' Repl.1969) and Ind.Const.

3. It is further considered, ordered and decreed that the defendant, John W. Ruge, his agents, deputies and employees are restrained and enjoined from failing to register to vote the named plaintiffs, Don Affeldt and Cordell Affeldt, provided that such named plaintiffs present themselves personally at the office of the Porter County, Indiana, Clerk within five (5) days subsequent to the date of this judgment order and make application to register to vote in the November 3, 1970 general election.