**John BUFFORD et al., Plaintiffs,**

v.

**Linwood HOLTON et al., Defendants.**

**Civ. A. No. 371–70–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

Argued Oct. 22, 1970.

Decided Oct. 27, 1970.

844

Edward B. Webb, Jr., Washington, D. C., Terrence A. Sidley and Lawrence E. Freedman, Alexandria, Va., Max O. Truitt, Jr. and Stephen F. Black, Washington, D. C., for plaintiffs.

Andrew P. Miller, Atty. Gen., Anthony Troy, Asst. Atty. Gen., Richmond, Va., and Jesse B. Wilson, III, Fairfax, Va., for defendants.

Before BRYAN, Circuit Judge, and LEWIS and MERHIGE, District Judges.

ALBERT V. BRYAN, Circuit Judge:

Virginia's laws—Constitution and statutes—requiring a residence of one year for eligibility to vote in a general election are now set upon by the plaintiffs, John and Veronica Bufford, suing for themselves and all others similarly circumstanced. They charge that the requirement is discriminative and, so, void under the Equal Protection Clause of the Fourteenth Amendment. Defendants are the State officials responsible for the conduct of all elections. Without factual conflict, the cause has been heard upon cross-motions for summary judgment and also in plenary fashion.

Plaintiffs moved into Virginia in January, 1970 and satisfy all election qualifications, except the one-year State residence, but including six-month residence in the city or county, and a 30-day residence in the precinct, where they seek to vote.[1] For want of the year's residence, they were refused registration to vote in the November 3, 1970 general election for United States Senator and Representatives.

The discrimination charged to Virginia is the grant of the ballot to the longer residents while begrudging it to later entrants into the State, without proving a reasonable relationship between the requirement of 12 months and the right to vote as well as a governmental interest, for the distinction.

Against this contention the defendants remind us that the privilege of a resident to vote roots from his State, and not from his United States citizenship. Pope v. Williams, 193 U.S. 621, 632, 24 S.Ct. 573, 48 L.Ed. 817 (1904). Furthermore, they press that Virginia is vested by the Federal Constitution with the power to regulate the conduct of elections for Senators and Representatives, and thus the State may frame and declare the qualifications of electors. Citation is made to these provisions:

"Article I, Section 2. The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.[2]

\* \* \* \* \* \*

"Section 4. The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

\* \* \* \* \* \*

"Amendment XVII. The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote.

---

1. The prescriptions imposed by Virginia are to be found in: State Constitution Article II, §§ 18, 20. Code of Virginia, 1950, as amended §§ 24–17, 24–17.1, 24–67, 24–67.1, 24–74, 24–75, 24–76, 24–82 and 24–83.

2. The one year's residence here in suit applies to such electors.

The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures."

■ We are of the opinion that the plaintiffs' contention must carry. Notwithstanding these Constitutional concessions to the State, it has been consistently held they are not illimitable. Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (June 15, 1970). Any constriction placed by the State on the right of suffrage must be tested against the Equal Protection Clause, which is delicately sensitive of any actual or possible strangling of the vote. Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Defining the voting prerogative as "individual and personal in nature", and noting the vigilance of the Clause to safeguard it, the Chief Justice in Reynolds v. Sims, *supra,* 377 U.S. 533, 561–562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964) said:

> "Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized. Almost a century ago, in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, the Court referred to 'the political franchise of voting' as 'a fundamental political right because preservative of all rights.' 118 U.S., at 370, 6 S.Ct., at 1071."

In our judgment, Virginia instantly has overreached its Constitutional power to fix the qualifications of voters.

Assuming the burden to be the plaintiffs', they have shown that the presumption of validity ordinarily accorded State action cannot save the Virginia laws. No such precedence is vouchsafed where voting rights are at stake. Kramer v. Union Free School District No. 15, 395 U.S. 621–627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). The laws prove unfirm because no justification is adduced, *ex facie* or by evidence *aliunde,* for a demand of as much as a year's residence.

This length of stay in the State is not defended as needed for exploring the *bona fides* of the applicant's residence nor for any other administrative objective. Indeed, the concept of 12 months for a canvass is refuted by the acknowledgment of six months as sufficient to satisfy the county or city residence. For the same reasons, time to prepare for the election has not been established as an acceptable reason for the requirement. See Shapiro v. Thompson, 394 U.S. 618, 633, 636–637, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ At all events, determinative here is the absence of any showing that the requirement is the creature of a compelling State interest. When the citizen's voice in government is significantly threatened by the State, it is no longer a sufficient reply to state "facts [which] reasonably may be conceived to justify it", as was treated as a satisfying replication in McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). To prevail, the latter must exhibit a compelling governmental interest for its action. Its act must be in promotion of that interest and no broader. NAACP v. Button, 371 U.S. 415, 439, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

To ascertain if there is such a paramount State concern in subordination of the citizen's recognized right, to be considered are "the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification". Williams v. Rhodes, *supra,* 393 U.S. 23, 30, 89 S.Ct. 5, 10 (1968). See dissent of Justice Harlan in Shapiro v. Thompson, *supra,* 394 U.S. 618, 655, 89 S.Ct. 1322, 22 L.Ed.2d 600 *et seq.* (1969). This determination is the court's burden and duty. Thus the ultimate question we must decide is whether Virginia's exclusion of the less-than-one-year residents is "necessary to promote" any governmental interest.

Cipriano v. City of Houma, 395 U.S. 701, 704, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Kramer v. Union Free School Distict No. 15, *supra*, 395 U.S. 621, 627, 89 S.Ct. 1886 (1969).

We do not think the State has made this proof. On the contrary the difference in treatment of residents, regardless of the State's intendment, is clearly an arbitrary discrimination. To begin with, this call for residence can without more be seen as an obstruction or deterrent to uninhibited interstate travel, admittedly a Constitutional prerogative. Shapiro v. Thompson, *supra*, at 629, 89 S.Ct. 1322. A person might well be unduly postponed in the enjoyment of his vote for an extortionate period, possibly as much as two years (short of a day) if he came into Virginia after November in a general election year. The newcomer may have lost his vote by departure from the former habitat and be unable to regain it with reasonable promptness in Virginia.

Again, the one-year stipulation loses strength through analogy. As recent as January 1970 the General Assembly of Virginia approved the adoption of the newly proposed State Constitution. In that document the requirement for State residence to vote is six months. Congress has fixed 30 days as the maximum "durational residency requirement as a precondition to voting for the offices of President and Vice President". Voting Rights Act Amendments of 1970, P.L. 91–285, Sec. 202(a), 84 Stat. 314. Well-reasoned opinions of the three-judge courts in Burg v. Canniffe, 315 F.Supp. 380 (D.Mass.1970); Blumstein v. Ellington, (M.D.Tenn.1970) and Hadnott v. Amos, 320 F.Supp. 107 (M.D.Ala. 1970) are trenchant precedents for the thesis we pursue, although *Burg* and *Blumstein* are pending appeal in the Supreme Court.

True, a multiple-judge court sitting in this Circuit held otherwise in Drueding v. Devlin, 234 F.Supp. 721 (1964), affirmed *per curiam* 380 U.S. 125, 85 S.Ct.

807, 13 L.Ed.2d 792 (1965). However, at that time the doctrine of the necessity for a compelling State interest to support any restriction on the voting franchise had not matured and been engrafted upon the criteria used to weigh the validity of such State action. This difference is pointed up by Justice Marshall dissenting in Hall v. Beals, 396 U.S. 45, 51, 90 S.Ct. 200, 24 L.Ed.2d 214 *et seq.* (1969).

We do not now intend to pronounce judgment against every State residence requirement. Nor does this opinion purport to announce the length of time allowable therefor. We merely say that the one-year rule is constitutionally impermissible for the reasons we have stated. Moreover, we do not in any way pass upon the validity of the voting residence required in the city, county or precinct as provided in the Virginia statutes.

In sum, the State laws in their requirement of one-year residence for voting registration must be declared invalid and their enforcement enjoined. Specifically, in the election on November 3, 1970 for United States Senator and Representatives in Congress, no person possessing all the attributes of eligibility save the one-year residence shall be barred from voting in Virginia.

Order in accordance with opinion.

OREN R. LEWIS, District Judge (dissenting).

I cannot agree with my colleagues that Virginia has overreached its [federal] constitutional power to fix the qualifications of voters.

They reach this conclusion in face of the Supreme Court's pronouncement in Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904), that a year's residence in the state as a prerequisite to voting therein was not violative of the Federal Constitution as against a citizen of another state moving into the state after the enactment of the requirement.

This is precisely the residential requirement[1] prescribed by the Virginia Constitution.

The same question as the Buffords raise here was also raised in the Maryland case[2]—namely—such a state constitutional requirement violates the equal protection clause of the Fourteenth Amendment in that it amounts to an irrational or unreasonable discrimination.

The three-judge Maryland court held to the contrary and denied the petitioners their right to vote in Maryland congressional elections.

I would deny the Buffords and those similarly situated the right to participate in Virginia congressional and local elections this coming November 3rd for the same reasons.

Although the Buffords' privilege to vote in Virginia may not be unreasonably abridged—they must have the qualifications for electors of the Virginia House of Delegates—These they do not have.

If Virginia's present durational residential period is to be reduced to six months or less as a prerequisite for voting, as the Buffords would have it—such can only be authorized by the qualified voters of Virginia[3] unless the Supreme Court of the United States reverses its holding in Pope and holds the twelve-month residential qualification there approved to be now constitutionally impermissible.

This Court, instead of following Pope and Drueding, has elected to follow Burg[4] and Blumstein,[5] both of which require the state to show a compelling state interest to [constitutionally] support any restrictions on the right to vote

—The Supreme Court has, so far, only used this yardstick in determining whether additional impediments may be engrafted upon the traditional residential and age voter requirements.

I would not jeopardize the validity of the coming Virginia congressional and local election by allowing the petitioners to vote therein[6]—Such could be the result if the Supreme Court on appeal reaffirms its holding in Pope.

To forestall such a result, the state should be directed to impound and count the ballots cast by petitioners and those similarly situated separate and apart from the remaining ballots.

---

1. Virginia's requirement is a year's residence in the state as a prerequisite to voting therein—Thirty-one sister states require like or longer durational qualification.

2. Drueding v. Devlin, 234 F.Supp. 721 (1964).

3. They are scheduled to vote on this question this coming November 3rd. I would give them that right unimpeded by our decision—The question here presented may then be moot. See Hall v. Beals,

396 U.S. 45, 90 S.Ct. 200, 24 L.Ed. 2d 214 (1969).

4. Burg v. Canniffe, 315 F.Supp. 380 (D. Mass.1970).

5. Blumstein v. Ellington (M.D.Tenn.1970).

6. I have been informed that the Arizona and Wisconsin three-judge courts have denied new residents of those states the privilege of voting in the coming congressional election.