## HALL et ux. v. BEALS, CLERK AND RECORDER OF EL PASO COUNTY, et al.

No. 39.   Argued October 14, 1969—Decided November 24, 1969

*Richard Hall* argued the cause *pro se* and for other appellant.

*Bernard R. Baker* argued the cause for appellees. With him on the brief were *Carroll E. Multz* and *Robert L. Russel.*

Briefs of *amici curiae* urging reversal were filed by *Solicitor General Griswold, Assistant Attorney General Leonard, Louis F. Claiborne,* and *Francis X. Beytagh, Jr.,*

for the United States; by *William F. Reynard, Melvin L. Wulf,* and *Eleanor Holmes Norton* for the American Civil Liberties Union et al.; by *Joseph L. Rauh, Jr., John Silard,* and *Elliott C. Lichtman* for the Bipartisan Committee on Absentee Voting; and by Harvey M. Burg.

*Louis J. Lefkowitz,* Attorney General, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *Brenda Soloff,* Assistant Attorney General, filed a brief for the State of New York as *amicus curiae* urging affirmance.

PER CURIAM.

The appellants moved from California to Colorado in June 1968. They sought to register to vote in the ensuing November presidential election, but were refused permission because they would not on election day have satisfied the six-month residency requirement that Colorado then imposed for eligibility to vote in such an election.[1] The appellants then commenced the present

---

[1] Colo. Rev. Stat. Ann. § 49–24–1 (1963) provided:

*"Eligibility of new resident to vote.*—Any citizen of the United States who shall have attained the age of twenty-one years, shall have resided in this state not less than six months next preceding the election at which he offers to vote, in the county or city and county not less than ninety days, and in the precinct not less than fifteen days, and shall have been duly registered as required by the provisions of this article, shall have the right to vote as a new resident for presidential and vice-presidential electors."

The appellant Richard Hall went to the office of the appellee Beals on or about August 1, 1968, to request that his wife and he be allowed to vote in the presidential election. Upon denial of his application, he wrote to the Colorado Secretary of State to ask that his wife and he be allowed to vote despite the six-month residency requirement. On September 6 the State Election Office informed the appellants they would not be permitted to vote.

Apart from the special provision relating to the eligibility of new residents to vote in a presidential election, Colorado requires that

class action against the appellees, electoral officials of El Paso County, Colorado. Their complaint challenged the six-month residency requirement as a violation of the Equal Protection, Due Process, and Privilege and Immunities Clauses of the Constitution. For relief they sought (1) a writ of mandamus compelling the appellees to register them for the upcoming presidential election; (2) an injunction restraining the enforcement and operation of the Colorado residency laws insofar as they applied to the presidential election; and (3) a direction that the appellees register the appellants and allow them to vote "on a conditional basis, so that should either party choose to appeal to the Supreme Court of the United States and such appeal should run past the time of the National Election on November 5, 1968, . . . the relief sought by [the appellants will] not become moot." [2]

On October 30 the three-judge District Court entered judgment for the appellees and dismissed the complaint, holding that the six-month requirement was not unconstitutional. *Hall* v. *Beals,* 292 F. Supp. 610 (D. C. Colo.).[3] As a result the appellants did not vote in the 1968 presidential election. They took a direct appeal to this Court pursuant to 28 U. S. C. § 1253, and we noted

---

persons desiring to vote in general, primary, and special elections must have resided in the State for one year. Colo. Rev. Stat. Ann. § 49–3–1 (1)(c) (1963).

[2] The request for relief continued:

"Should Plaintiffs win an eventual appeal, the Defendant Election Officials shall be directed to count Plaintiffs' votes as normally cast and valid ballots; should Plaintiffs lose on final appeal to the Supreme Court of the United States, Defendant Election Officials shall destroy Plaintiffs' ballots as if they had never been cast. This conditional registration is the only way Plaintiffs' sought-for relief can be preserved should an appeal by either party run past the date of the National Election in question."

[3] The opinion of the District Court was issued on November 29, 1968.

probable jurisdiction, 394 U. S. 1011. Thereafter the Colorado Legislature reduced the residency requirement for a presidential election from six months to two months.

The 1968 election is history, and it is now impossible to grant the appellants the relief they sought in the District Court. Further, the appellants have now satisfied the six-month residency requirement of which they complained. But apart from these considerations, the recent amendatory action of the Colorado Legislature has surely operated to render this case moot. We review the judgment below in light of the Colorado statute as it now stands, not as it once did. *Thorpe* v. *Housing Authority,* 393 U. S. 268, 281–282; *United States* v. *Alabama,* 362 U. S. 602, 604; *Hines* v. *Davidowitz,* 312 U. S. 52, 60; *Carpenter* v. *Wabash R. Co.,* 309 U. S. 23, 26–27; *United States* v. *Schooner Peggy,* 1 Cranch 103, 110. And under the statute as currently written, the appellants could have voted in the 1968 presidential election. The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law. *Golden* v. *Zwickler,* 394 U. S. 103, 110; *Baker* v. *Carr,* 369 U. S. 186, 204; *Mills* v. *Green,* 159 U. S. 651, 653.

The appellants object now to the two-month residency requirement as vigorously as they did to the six-month rule in effect when they brought suit. They say that such statutes, in Colorado and elsewhere, continue to have an adverse effect upon millions of voters throughout the Nation. But the appellants' opposition to residency requirements in general cannot alter the fact that so far as they are concerned nothing in the Colorado legislative scheme as now written adversely affects either their present interests, or their interests at the time this litigation was commenced. Nor does the result differ

because the appellants denominated their suit a class action on behalf of disenfranchised voters. The appellants "cannot represent a class of [which] they are not a part," *Bailey* v. *Patterson,* 369 U. S. 31, 32–33—that is, the class of voters disqualified in Colorado by virtue of the new two-month requirement, a class of which the appellants have never been members.

Nothing in *Moore* v. *Ogilvie,* 394 U. S. 814, is to the contrary. There we invalidated an Illinois statute requiring that independent candidates for presidential elector obtain signatures on their nominating petitions from voters distributed through the State. We noted that even though the 1968 election was over, "the burden . . . placed on the nomination of candidates for statewide offices remains and controls future elections, as long as Illinois maintains her present system as she has done since 1935." 394 U. S., at 816. The problem before us was " 'capable of repetition, yet evading review,' " not only because the same restriction on Moore's candidacy that had adversely affected him in 1968 could do so again in 1972, but because Illinois, far from having altered its statutory scheme for the future benefit of those situated similarly to Moore, had adhered for over 30 years to the same electoral policy with no indication of change.

Here, by contrast, the appellants will face disenfranchisement in Colorado in 1972 only in the unlikely event that they first move out of the State and then re-establish residence there within two months of the presidential election in that year. Or they may take up residence in some other State, and in 1972 face disqualification under *that* State's law. But such speculative contingencies afford no basis for our passing on the substantive issues the appellants would have us decide with respect

to the now-amended law of Colorado.  *Golden* v. *Zwickler, supra.*

The judgment of the District Court is vacated and the case is remanded with directions to dismiss the cause as moot.

*It is so ordered.*

MR. JUSTICE BRENNAN, dissenting.

I dissent from the direction to dismiss this case as moot.  *Moore* v. *Ogilvie,* 394 U. S. 814 (1969), involved a challenge to the constitutionality of a statute which had been invoked to deny the appellants a place on the 1968 ballot.  We were not persuaded in that case by the argument that the appeal should be dismissed since the 1968 election had been held and there was no possibility of granting any relief to appellants.  Even though appellants did not allege they would seek a place on the ballot at future elections, we held that the constitutional question was one "capable of repetition, yet evading review," *Southern Pacific Terminal Co.* v. *ICC,* 219 U. S. 498, 515 (1911), and, therefore, that mootness would not prevent our decision of its merits.  In my view the present case is an even stronger one for application of that principle.  At stake here is the fundamental right to vote—the right "preservative of other basic civil and political rights," *Reynolds* v. *Sims,* 377 U. S. 533, 562 (1964); see also *Harper* v. *Virginia Board of Elections,* 383 U. S. 663, 670 (1966), and the constitutional challenge of the amended Colorado statute is peculiarly evasive of review.  This is because ordinarily a person's standing to make that challenge would not mature unless he had become a Colorado resident within two months prior to a presidential election.  Barring resort to extraordinary expedients, that interval is obviously too short for the exhaustion of state administrative remedies and the completion of a lawsuit through filing of the

complaint in a federal district court, convening of a three-judge court, trial, and review by this Court.* True, today's virtual foreclosure of any opportunity for definitive judicial review may in some measure be prevented by resort to waiver of the requirement of exhaustion of administrative remedies, preferred calendar position, or even relaxation of the rules of ripeness to permit a person not yet a resident to challenge the statute on a showing of reasonable certainty that he would be moving to the State within the two-month period. But the difficulties which attend these expedients only buttress my conclusion that if mootness did not bar decision of the constitutional question in *Moore* v. *Ogilvie,* there is even more reason to hold that mootness does not bar decision of the constitutional question presented here.

Reaching the merits, I would reverse for the reasons stated by MR. JUSTICE MARSHALL in his dissenting opinion, which I join.

MR. JUSTICE MARSHALL, whom MR. JUSTICE BRENNAN joins, dissenting.

I agree with my Brother BRENNAN that this case is not moot. It involves one of those problems " 'capable of repetition, yet evading review,' " that call for relaxation of traditional concepts of mootness so that appellate review of important constitutional decisions not be permanently frustrated. *Moore* v. *Ogilvie,* 394 U. S. 814, 816 (1969).

Indeed, one of the unfortunate consequences of a rigid view of mootness in cases such as this is that the state and lower federal courts may well be left as the courts of last resort for challenges of relatively short state residency requirements. Those courts may, as the District Court apparently did in this case, consider them-

---

*The proceedings would probably require even more time if the plaintiff sued in state court, for review in this Court would come only after one or more levels of state appellate review.

selves bound by this Court's summary *per curiam* affirmance in *Drueding* v. *Devlin,* 380 U. S. 125 (1965), aff'g 234 F. Supp. 721 (D. C. Md. 1964), which upheld a one-year residency requirement for voting in a presidential election. It seems to me clear that *Drueding* is not good law today. The difficulties of achieving review in this Court in cases of this sort, combined with this misleading precedent, lead me to indicate briefly my view of the merits of the case before us.

In *Drueding,* the District Court tested the residency requirement there challenged by the equal-protection standard applied to ordinary state regulations: that is, restrictions need bear only some rational relationship to a legitimate end. 234 F. Supp., at 724–725, citing *McGowan* v. *Maryland,* 366 U. S. 420, 425 (1961). But if it was not clear in 1965 it is clear now that once a State has determined that a decision is to be made by popular vote, it may exclude persons from the franchise only upon a showing of a compelling interest, and even then only when the exclusion is the least restrictive method of achieving the desired purpose. *Harper* v. *Virginia Board of Elections,* 383 U. S. 663, 667 (1966); *Kramer* v. *Union School District,* 395 U. S. 621, 626–628 (1969). Close scrutiny is thus demanded of Colorado's requirement that in order to vote for President and Vice President, one must not only be a resident of that State, but one must have been a resident for a certain time before the election—six months when this suit was brought; now, two months.

In support of this requirement, it is urged that the electoral college system as embodied in the Constitution contemplates the election of the President and Vice President, not by the Nation as such, but rather by the individual States, each acting as a community. Hence, the argument goes, each State may legislate to ensure that those voting for its presidential electors are truly members of the state community.

The argument is surely correct as far as it goes, and this Court has often reaffirmed the power of the States to require their voters to be bona fide residents. *Carrington* v. *Rash,* 380 U. S. 89, 93–94 (1965); *Kramer* v. *Union School District, supra,* at 625. But this does not justify or explain the exclusion from the franchise of persons, not because their bona fide residency is questioned, but because they are recent rather than longtime residents.[1]

Nor is it a justification to say that the State has certain parochial interests at stake in the election of a President, and that it may require of its voters a period of residency sufficiently lengthy to impress upon them the local viewpoint. This is precisely the sort of argument that this Court, in *Carrington* v. *Rash, supra,* found insufficient to justify Texas' exclusion from voting in state elections of servicemen who had acquired Texas residency after they had entered the service. The State argued that military men newly moved to Texas might not have local interests sufficiently at heart. This Court replied:

> "But if they are in fact residents, with the intention of making Texas their home indefinitely, they, as all other qualified residents, have a right to an equal opportunity for political representation. . . . 'Fencing out' from the franchise a sector of the population because of the way they may vote is constitutionally impermissible." 380 U. S., at 94.

Similarly here, the fact that newly arrived Coloradans may have a more national outlook than longtime residents, or even may retain a viewpoint characteristic of

---

[1] *Pope* v. *Williams,* 193 U. S. 621 (1904), upheld a one-year residency requirement for voting in *state* elections. The Court specifically reserved the question of durational residency requirements as applied to voting in presidential elections. *Id.,* at 633. In any case, *Pope* was decided long before application of the "compelling interest" test to restrictions on the franchise.

the region from which they have come, is a constitutionally impermissible reason for depriving them of their chance to influence the electoral vote of their new home State.

Nor does it suffice to argue that a durational residency requirement ensures that voters have had the time to gain knowledge of local issues, as distinguished from indoctrination in local attitudes. Even if it can be assumed that new residents know less about local issues than old residents, issues of this sort play so small a part in the election of the President and Vice President today that this can hardly be considered a compelling interest sufficient to justify entirely depriving millions of Americans of any opportunity to vote for their most important leaders. Cf. *Kramer* v. *Union School District, supra,* at 633.

The appellees argue that the State's durational residency requirement is necessary to ensure the purity of its elections. The impurities feared ("dual voting" and "colonization") all involve the same evil—voting by nonresidents, either singly or in blocks. But it is difficult to see how the durational residency requirement in any way protects against nonresident voting. The qualifications of the would-be voter in Colorado are determined when he registers to vote, which he may do until 20 days before the election. Colo. Rev. Stat. Ann. § 49–4–2 (1) (Supp. 1965). At that time, he establishes his qualifications, including durational residence, by oath. Colo. Rev. Stat. Ann. § 49–4–17 (Supp. 1965.) The nonresident, seeking to vote, can as easily falsely swear that he has been a resident for a certain time, as he could falsely swear that he is presently a resident. The requirement of the additional element to be sworn—the duration of residency—adds no discernible protection against "dual voting" or "colonization" by voters willing to lie. Insofar as appears from the Colorado election laws, and from

the record in this case, the State makes no independent attempt to go behind the voter's oath to determine his qualifications. See Colo. Rev. Stat. Ann. § 49–13 (Supp. 1965).

Moreover, even if an enforcement effort were made to prevent nonresident voting, and the exclusion of those taking up residency within two months of the election were used as a method of eliminating cases on the borderline between new residents and mere visitors, such an approach would be constitutionally overbroad. In *Carrington* v. *Rash, supra,* the State similarly argued that it was in many instances difficult to tell whether persons moving to Texas while they were in the service had the genuine intent to remain that establishes residency. Thus, the argument went, the administrative convenience of avoiding difficult factual determinations justified a blanket exclusion of all those in the doubtful category. The Court rejected such a "conclusive presumption" approach, noting that "States may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the State." 380 U. S., at 96. Cf. *Harman* v. *Forssenius,* 380 U. S. 528, 542–543 (1965).

Similarly here, a conclusive presumption that a recently established resident is not a resident at all for voting purposes is simply an overbroad burden upon the right to vote. In most cases, it is no more difficult to determine whether one recently arrived in the community has sufficient intent to remain to qualify as a resident than it is to make a similar determination for an older inhabitant.[2] That there are borderline cases among the new

---

[2] For instance, the appellants in this case, before applying for their ballots, had bought a home in Colorado Springs, registered their car with the Colorado Department of Motor Vehicles, acquired Colorado drivers' licenses, and registered their eldest child in a private nursery school; further, Mr. Hall had taken permanent employment with a law firm in Colorado Springs.

arrivals is not a constitutionally sufficient reason for denying the vote to those who have settled in good faith.

Finally, appellees argue that the logistics of preparing for an election require that there be some time between the close of registration and the election itself. This period serves as a kind of residency requirement, in that persons establishing residency after the voting lists are closed are barred from voting. Yet this requirement is justified by compelling administrative needs. And, it is argued, once some period of this sort is conceded to be required, it is arbitrary for the courts to determine as a matter of constitutional law how long it may be.

But this argument is unconvincing here. Colorado has apparently judged that administrative needs require 20 days between the close of registration and election day. Colo. Rev. Stat. Ann. § 49–4–2 (2) (Supp. 1965). Appellants have not challenged this statute. What they have challenged is the separate and additional requirement that voters, all of whom register before the 20-day cutoff date, also must have been residents of the State at least six months—by recent amendment two months—before the election. Colo. Rev. Stat. Ann. § 49–24–1 (1963). For the argument from logistical need to save the durational residency requirement, the State would have to show some additional administrative need for this further burden on the right to vote. No such showing has been made. In my view the Colorado durational residency requirement for voters for President and Vice President violates the Equal Protection Clause, and appellants are entitled to reversal of the District Court judgment that upheld that requirement.