466 F.2d 869
 In the Matter of The Parsons Investment Company, Debtor.
The PARSONS INVESTMENT COMPANY, Appellant,
v.
CHASE MANHATTAN BANK, Appellee.
In the Matter of BOC Investment Company, Debtor.
BOC INVESTMENT COMPANY, Appellant,
v.
CHASE MANHATTAN BANK, Appellee.
 Nos. 71-1433, 71-1434.
 United States Court of Appeals,
Sixth Circuit.
 Sept. 11, 1972.
 
 1
 James O. Thompson, Southfield, Mich., for appellants; Irving A. August, August, Thompson & Sherr, P.C., Southfield, Mich., on briefs.
 
 
 2
 Theodore Souris, Detroit, Mich., for Chase Manhattan Bank N.A.; Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., Adlai S. Hardin, Jr., Milbank, Tweed, Hadley & McCloy, New York, N. Y., on briefs.
 
 
 3
 Eugene Driker, Detroit, Mich., for the Bank of the Commonwealth; Barris, Sott, Denn & Driker, Detroit, Mich., on briefs.
 
 
 4
 Joseph S. Radom, Detroit, Mich., for Alexander G. Andrews, receiver; Jaffe, Snider, Raitt, Garratt & Heuer, Detroit, Mich., and Leonard Meldman, Detroit, Mich., on briefs.
 
 
 5
 Before McCREE, and MILLER, Circuit Judges, and ENGEL,* District Judge.
 
 
 6
 ENGEL, District Judge.
 
 
 7
 This appeal challenges the propriety of an order issued by the Chief Judge of the United States District Court for the Eastern District of Michigan in vacating and setting aside a temporary restraining order which had been previously entered by the referees in bankruptcy of that court. For the reasons which follow, we dismiss the appeal because the issues raised therein are moot.
 
 
 8
 In this otherwise highly complicated matter, it is necessary to summarize the relevant facts only briefly. On February 10, 1971, debtors and appellants Parsons Investment Company (hereinafter Parsons) and BOC Investment Company (hereinafter BOC) each filed petitions for arrangement under Chapter XI of the Bankruptcy Act. On the same day, the referees in bankruptcy, on application of appellants, issued a temporary restraining order preventing Chase Manhattan Bank (hereinafter Chase) from proceeding with the scheduled sale at public auction in New York of a substantial block of common stock, cumulative preferred stock and common stock warrants in the Bank of Commonwealth (hereinafter Commonwealth). Chase appeared at the hearing and opposed issuance of the order.
 
 
 9
 The stock involved was registered in the name of the appellants, but was held by Chase as collateral for a loan made by it to appellants. The loan having been in default, Chase had noticed a public sale thereof in New York on February 11, 1970, and the temporary restraining order issued by the referees effectively frustrated the sale on the scheduled date. Chase then re-noticed the proposed public sale for 4:00 p.m. February 19, 1971. At the time of issuing the temporary restraining order, the referees also issued an order directed to Chase to show cause before them at 11:00 a. m. February 18, 1971, why a temporary injunction further restraining the sale of the stock should not issue.
 
 
 10
 On Sunday, February 14, 1971, Commonwealth, which was not present at the February 10 meeting before the referees, filed directly with the Chief Judge of the Eastern District of Michigan its petition seeking review of the temporary restraining order issued by the referees and dissolution thereof. The Chief Judge thereupon ordered a hearing to be held the following day, February 15, (a legal holiday) at which time counsel for the debtors, for Commonwealth and for Chase appeared. Chase on that day appeared in support of the position of Commonwealth and also filed directly with the judge its own petition for review of the orders of the referees. At approximately 4:00 p.m. February 15, 1971, the Chief Judge, in an opinion dictated from the bench, vacated the temporary restraining orders previously entered by the referees. This was followed on February 17, 1971, by findings of fact and conclusions of law supporting the order so entered. The Chief Judge's actual order was directed solely to the vacation and dissolution of the temporary restraining order and the order did not in any way interfere with or disturb the show cause order issued by the referees and the date set for hearing the same before the latter.
 
 
 11
 Accordingly and as scheduled, a hearing on the show cause order was held before the referees in bankruptcy on February 18, 1971 and extended into the following day. At approximately 3:45 p.m. on February 19, counsel for appellants again sought from the referees a temporary restraining order which would have prevented Chase from proceeding with the adjourned sale which was then scheduled for 4:00 p.m. that day. The referees declined to grant such request and in addition ultimately declined to grant a temporary injunction. The record shows that Chase thereupon at 4:00 p.m. held the sale and itself bid in on the collateral and reduced the same to ownership. The propriety of the action of the referees at the show cause hearing is not before us in this appeal, but is rather the subject of a separate petition for review pending now before a different judge of the Eastern District of Michigan and we express no opinion about this matter whatsoever.
 
 
 12
 It is not necessary for our purposes here to detail the extraordinary circumstances which prompted the filing directly with the Chief Judge of the petition for review on a holiday weekend and which in his judgment warranted the extraordinary intervention in the case and dissolution of the temporary restraining order issued by the referees. Suffice it to say that the record made before the Chief Judge satisfied the latter of the impropriety of the issuance of the original temporary restraining order and the necessity for its immediate dissolution in order to avoid a grave emergency in banking circles in which the very viability of the Bank of the Commonwealth and its ability to open its doors to business on the Tuesday following the long holiday were placed in jeopardy.
 
 
 13
 This appeal seeks to frame several challenging legal issues, particularly those involving the standing of the Bank of the Commonwealth in its own right to seek review of the temporary restraining order and the power of the Chief Judge of a District Court to intervene directly under the emergency conditions which he found existed here. They are not likely, however, to recur in this controversy, and while their resolution might add to jurisprudence generally, it would not affect in any practical way the controversy at hand. Without in any way suggesting that the Chief Judge was without the power to act as he did, we are of the opinion that the issues raised are nevertheless rendered moot by subsequent events and that good sense and sound judicial precedent persuade us to resist the temptation to pass upon them here.
 
 
 14
 The long established common law rule permitting courts to decide only cases which present justiciable controversies was elevated to a constitutional requirement for federal court jurisdiction by the provisions of Article III, Section 2 of the United States Constitution which confines such jurisdiction to "cases" and "controversies". See, generally, Diamond, Federal Jurisdiction to Decide Moot Cases, 94 U.Pa.L.Rev. 124 (1946) and Note, Cases Moot on Appeal: A Limit on the Judicial Power, 103 U.Pa. L.Rev. 722 (1955).
 
 
 15
 A dispute may lose its character as a case or controversy, thus rendering it moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome", Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969), and see Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); or when subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur, United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); or when subsequent events make it impossible for the court to grant to the prevailing party effectual relief, Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293 (1895), since "the thing sought to be prohibited has been done, and cannot be undone by any order of court." Jones v. Montague, 194 U.S. 147, 153, 24 S.Ct. 611, 613, 48 L.Ed. 913 (1904).
 
 
 16
 Of the many judicial definitions of mootness, perhaps the best is found in Ex Parte Steele, 162 F. 694, 701 (N. D.Ala. 1908):
 
 
 17
 ". . . a moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy."
 
 
 18
 The facts before us in this appeal clearly indicate that it is moot within the meaning of the definition cited. The temporary restraining order issued by the referees effectively accomplished its immediate purpose insofar as appellants are concerned by preventing the sale of the stock on the day following its issuance. If the order had been allowed to stand, it was in any event good only until the referees further considered and acted upon the application for temporary restraining order at the hearing scheduled to commence on February 18.
 
 
 19
 Although the order appealed from left Chase free to hold the sale during the brief period between its issuance and the time of the show cause hearing, no sale in fact took place in this time. Insofar as any demonstrated rights of appellants were concerned, they were therefore in fact unaffected by the order appealed from here. Consequently, any decision and order of this court on the narrow question presented could have no practical effect upon the parties and their respective rights.
 
 
 20
 The hearing on the show cause order was undisturbed by the Chief Judge and hence on February 18, the matter was back in the hands of the referees to be heard by them according to normal procedures. They were then free to act on the issue of injunctive relief and in such manner as they might see fit, based upon the record which would then be made before them.
 
 
 21
 Appellants urge that the issues are not moot because of the extensive findings of fact and conclusions of law entered by the Chief Judge following the emergency hearing before him. They further urge that the impact thereof was necessarily persuasive upon the subsequent actions of the referees in bankruptcy. As extensive and carefully worded as those findings and conclusions may have been, they nevertheless, extended only to the single issue before the Chief Judge, that of whether the temporary restraining order should be dissolved and had to be based upon the record which was then made before him. The argument thus made by appellants goes to the propriety and motivation of the referees in reaching judicial decisions which are not subject to review on this appeal. In effect, the argument asks us to render an advisory opinion. This we may not do. As stated in Mills, supra, 159 U.S. at page 653, 16 S.Ct. at page 133:
 
 
 22
 "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal."
 
 
 23
 Accordingly, the appeal is dismissed.
 
 
 
 *
 Hon. Albert J. Engel, United States District Court for the Western District of Michigan, sitting by designation