**Lori PATON et al., Plaintiffs,**

**v.**

**J. Wallace LA PRADE et al.,
Defendants.**

**Civil A. No. 1091-73.**

United States District Court,
D. New Jersey.

Aug. 29, 1974.

Frank Askin, Newark, N. J., for plaintiffs.

Henry E. Petersen, Asst. Atty. Gen., Washington, D. C., Jonathan L. Goldstein, U. S. Atty., Newark, N. J., David H. White, Dept. of Justice, Washington, D. C., for defendants.

## OPINION

COOLAHAN, District Judge.

On January 11, 1973 the Director of the Federal Bureau of Investigation (FBI) requested the United States Postal Inspection Service to institute a 120-day mail cover on the national headquarters of the Socialist Workers Party (SWP) in New York City.[1] The mail cover was executed by a foreman in the New York City Post Office, who copied the information found on the envelopes of letters sent to the SWP. All information was forwarded to the New York City division of the FBI. In the course of this mail cover, the name and address of plaintiff Lori Paton were found. Plaintiff Paton's name and address were sent to defendant Special Agent-in-Charge La Prade of the Newark, New Jersey, FBI office. After it was ascertained that the Newark FBI files contained no information about her, Special Agent John Devlin of the Paterson, New Jersey, Resident Agent Office was assigned to investigate plaintiff Paton.

Devlin confirmed, through use of a local area directory, that plaintiff Arthur H. Paton (Lori Paton's father) lived at the address found on the letter surveyed in the mail cover. Through inquiries at a local credit bureau, Devlin learned the past and present addresses of Lori Paton's parents and the past and present places of employment of her father. Devlin interviewed Chester Township Chief of Police Edward Strait, who informed Devlin that no member of the Paton family had a criminal record. West Morris-Mendham Park High School Principal Richard Matthews and Vice Principal Gerald Werle were interviewed by Devlin. The agent learned that Lori Paton was a student at the High School and was enrolled in a course entitled "Left to Right" which involved the writing of letters to political organizations of various persuasions.

Devlin concluded his investigation with his visit to the High School and reported on his findings to La Prade on April 2, 1973. A memorandum dated May 7, 1973, written by Special Agent John H. Bryan at Newark to La Prade, stated:

> In view of the fact that the subject is a high school student who apparently contacted the national office of the SWP in New York for information for one of her courses and, due to the fact that she is not believed to be involved in subversive matters, it is recommended that this case be closed administratively.

The FBI has produced, and plaintiffs have filed with this Court as part of the public record in this action, the foregoing memorandum of Special Agent Bryan and the remaining FBI files in the Paton investigation. (See Government brief at 4.) The FBI has revealed further that "Plaintiff Paton's file carries the filing symbol 'SM–SWP', standing for 'Subversive Matter-Socialist Workers Party', which identifies the larger investigation of which the inquiry respecting her was a part."

■ Lori Paton, suing by her father, and William Gabrielson, her teacher in the course "Left to Right," are plaintiffs of record here. Plaintiffs have brought suit on the grounds that defendants have violated plaintiffs' rights under 18 U.S.C. § 1702[2] and the following

---

1. At the time of the mail cover the SWP was on the Attorney General's list of subversive organizations. The list has since gone out of existence.

2. 18 U.S.C. § 1702 provides:

    Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from

provisions of the United States Constitution: First Amendment (chilling and impeding the exercise of free political expression and inquiry); Fourth Amendment (illegally investigating plaintiffs); Fifth Amendment (depriving plaintiffs of due process of law); and Sixth Amendment (prosecuting plaintiffs without affording plaintiffs the right to trial by jury or other procedural safeguards).

Plaintiff Lori Paton has demanded $15,000 compensation from individual FBI agents and $50,000 in punitive damages. Plaintiffs together seek a declaratory judgment holding the SWP mail cover and investigations stemming from it to be illegal. They request injunctive relief barring such mail covers and investigations in the future. Lastly, plaintiffs seek "a mandatory injunction ordering the defendants to produce before the Court for destruction all records and notations made and maintained by them describing the correspondence and constitutionally protected educational, political and other activities of plaintiffs."

Before the Court are several motions of each party: motion by plaintiffs to add specific FBI agents as parties defendant and to amend the complaint by including various details learned through discovery; motion by plaintiffs to compel the Government to give further answers and explanations in discovery; motions by plaintiffs for a preliminary injunction requiring the FBI to cease any investigation of plaintiffs and to expunge its records containing information on Lori Paton; motion by the Government on behalf of defendants for an order of dismissal or in the alternative for summary judgment denying the relief plaintiffs seek.

On January 14, 1974 this Court rendered a bench ruling and order denying, under Rule 23(c)(1) of the Federal Rules of Civil Procedure, plaintiffs' motion to certify a class joining as plaintiffs with the named plaintiffs:

. . . all persons who have been or will become engaged in correspondence with dissident political groups or organizations in pursuance of their rights under the United States Constitution; and whose correspondence is surveilled by defendants, their agents, employees or informants without authority pursuant to a valid search warrant; and who thereby become subjects of files, dossiers, index cards, memoranda or other records maintained by the defendants, their agents, servants, employees or informants. [Notice of motion filed by plaintiffs on November 20, 1973.]

The Court denied plaintiffs' motion on the ground that the position of plaintiffs failed to satisfy the requirements of Rule 23(a)(3) of the Federal Rules of Civil Procedure which states:

. . . the claims or defenses of . . . representative parties [must be] typical of the claims or defenses of the class.

It is admitted by the Government in the official record of this action that Lori Paton's interest in the SWP was momentary and academic and that the Paton investigation was quickly terminated. It has not been shown that other persons investigated pursuant to the SWP mail cover had such mild contact with the SWP or were cleared of suspicion as completely as was Lori Paton. She cannot be an adequate representative for persons who may have had close affiliation with the SWP and persons who may have had illegal or suspicious activities uncovered as a result of the mail cover investigations.

In Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), the Supreme

---

any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another,

or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more then five years, or both.

It is not disputed that this is a criminal statute. Plaintiff[s] can have no civil right of action arising from the provision.

Court determined that Colorado residents who had been barred from voting due to a six-month residency requirement could not represent a class of all persons barred from voting when the residency period was changed, after the election, from six to two months. The Court stated, 396 U.S. at 48–49, 90 S.Ct. at 202:

> . . . so far as [plaintiffs] are concerned nothing in the . . . legislative scheme as now written adversely affects either their present interests, or their interests at the time this litigation was commenced . . . The [plaintiffs] 'cannot represent a class of [which] they are not a part,' Bailey v. Patterson, 369 U.S. 31, 32–33 [82 S.Ct. 549, 7 L.Ed.2d 512]. . .

Hall v. Beals is analogous to the situation here. Like the Hall v. Beals plaintiffs, the interests of the instant plaintiffs are not being "adversely" affected as the litigation moves forward, whereas at least some members of the purported class are continuing to see themselves harmed. Thus, the instant plaintiffs cannot be deemed to be part of the class they seek to represent. See also Carter v. Butz, 479 F.2d 1084 (3d Cir.), cert. den., 414 U.S. 1094, 94 S.Ct. 727, 38 L.Ed. 2d 552 (1973) (in suit seeking relief for deprivation of food stamps, the Court affirmed the ruling of the District Judge denying the class where there were "disparate factual circumstances of class members," 479 F.2d at 1089); Rothblum v. Board of Trustees of College of M. & D. of N. J., 474 F.2d 891 (3d Cir. 1973) (foreign students suing for entrance to State medical school on basis that they were discriminated against because of national origin could not sue on behalf of class where the particular plaintiffs were actually rejected because of their grades); Committee to Free the Fort

Dix 38 v. Collins, 429 F.2d 807 (3d Cir. 1970) (statement that suit was brought on behalf of all persons seeking to keep open the right to demonstrate at a military base was insufficient to state a class action).

■■ The Court finds, for much the same reason it found plaintiffs not to qualify as representatives of the class plaintiffs wished the Court to certify, that plaintiffs have not been harmed in such a way as to support their demand for much of the relief they seek.[3] The only personal harm that Lori Paton has argued at all convincingly that she has suffered is possible harm to her reputation as a result of the fact that she was investigated.[4] Yet, unlike many persons who see their reputations clouded by investigation or prosecution, Lori Paton has seen her name totally cleared of any wrongdoing. No one doubts that there has not been even the smallest degree of impropriety, legal or otherwise, in her communication with the SWP. The FBI has placed into the public record its file showing that there was not one shred of negative information obtained through the Paton investigation. The opinion of this Court, reiterating the innocence of Lori Paton, now becomes part of the public record. Plaintiff Paton may argue that despite these pronouncements, the fact of having once been investigated leaves an indelible blemish on her reputation. This Court cannot, however, accept as legally significant, the argument that members of the public have insufficient intelligence to place the fact that there has been an investigation into the proper perspective when faced with the clear public record outlined in this opinion. Such a view would defy common sense.

---

3. Plaintiff Gabrielson has complained that attendance in his course declined after word of the Paton investigation was circulated. This fact, if true, does not constitute sufficient direct personal harm to Gabrielson to provide a legal basis for the relief he seeks.

4. No party contests the fact that word of the FBI investigation spread within the High

School and later throughout the local and general communities. The Government has stressed that plaintiff Paton, through interviews with the press and other media, has done more than anyone else to cause her investigation to become public knowledge. The Court feels it is unnecessary to discuss the legal implications of the Government's assertion.

As she has failed to show injury to her reputation, plaintiff has failed to show other injury. Her privacy has not been invaded. None of her own time was taken up in the investigation. She was not harassed in any way. Her right of political inquiry has not been abridged; information requested from the SWP was received. The Supreme Court has noted the

> "established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action. . . ." Ex parte Levitt, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937).

Laird v. Tatum, 408 U.S. 1, 13, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Because plaintiffs have failed to show a "direct injury," there is no judicial power to invoke the relief they seek. See also Linda R. S. v. Richard D., 410 U.S. 614, 618, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).

Plaintiff Paton has argued, however, and this Court holds, that irrespective of the question of the legality of the FBI investigation,[5] there is no legal justification for the continued possession by the FBI of the Paton file, marked "SM–SWP." Courts have recognized that the "Federal Court's broad and flexible equitable powers" allow limits to be placed on the maintenance and dissemination of police records.[6] Sullivan v. Murphy, 156 U.S.App.D.C. 28, 478 F.2d 938, 971, cert. den., 414 U.S. 880, 94 S.Ct. 736, 38 L.Ed.2d 125 (1973). Also see United States v. Kalish, 271 F.Supp. 968, 970 (D.P.R.1967). Insofar as plaintiff Paton's files contain no information which could be useful to the FBI in the exercise of its law enforcement functions and the existence of those records may

at a later time become a detriment to her, this Court holds that the Paton FBI file should be removed from the custody of the Government and destroyed.

Because the Court is granting defendants' motion for summary judgment in part and plaintiffs' motion for injunctive relief in part, it is unnecessary to address the instant procedural and discovery motions or the substantive question of the legality of the SWP mail cover.

Counsel will submit an order in conformity with this opinion.

---

5. No assertion has been made that plaintiff Gabrielson has been the subject of an investigation related to the SWP mail cover.

6. The *Sullivan* and *Kalish* cases, cited infra, involved arrest records which this Court

views as being generally of greater importance to the police than records compiled in investigations that do not produce arrests or arrest warrants.