516 F.2d 760
 170 U.S.App.D.C. 167
 NATIONAL ASSOCIATION OF INDEPENDENT TELEVISION PRODUCERS AND
DISTRIBUTORS, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and the United States of
America, Respondents,
Westinghouse Broadcasting Company, Inc., Intervenor.
 No. 73-2052.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 17, 1974.
Decided July 28, 1975.
 
 Katrina Renouf, Washington, D. C., for petitioner.
 R. Michael Senkowski, Counsel, Federal Communications Commission, with whom John W. Pettit, Gen. Counsel, Federal Communications Commission at the time the brief was filed, Joseph A. Marino, Associate Gen. Counsel, Federal Communications Commission, and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief for respondents.
 John D. Lane, Washington, D. C., was on the brief for intervenor. Ramsey L. Woodworth, Washington, D. C., also entered an appearance for intervenor.
 Before TAMM and MacKINNON, Circuit Judges, and MERHIGE,* United States District Judge for the Eastern District of Virginia.
 Opinion for the court filed by Circuit Judge MacKINNON.
 MacKINNON, Circuit Judge:
 
 
 1
 In May 1970, in response to increasing network domination of television, the Federal Communications Commission enacted the Prime Time Access Rule (PTAR).[1] The rule required that licensees in the nation's fifty largest metropolitan areas broadcast independently produced programming during at least one of the four hours of evening viewing designated "prime time." A corollary, the "off-network rule,"[2] specified that programs previously aired by networks could not be used to satisfy the nightly PTAR requirement. Though previous attempts to revise the rule have been frustrated by court action, a modified version designated "PTAR III" is presently scheduled to take effect on September 8, 1975.[3]
 
 
 2
 Xerox Corporation acquired a license to show Alistair Cooke's America series in the United States. The license included the first two complete showings of the series. Because the first presentation, during the '72-'73 television season, fell in the 10:00-11:00 P.M. time slot, Xerox sought to rebroadcast the program the next season at an earlier hour in order that it might reach a substantial audience of schoolchildren. To facilitate rebroadcast in an earlier time slot, Hughes Television Network and Needham, Harper and Steers Advertising, Inc. (Hughes), agent for Xerox, petitioned the FCC for waiver of its off-network rule. Hughes conceded that licensees were free to show America at any hour they desired, simply by preempting regular network shows, but argued that waiver would induce licensees in the top fifty markets covered by PTAR to carry the program. Hughes asserted that because the show was independently owned and produced, and because it was universally acknowledged to be of unusual educational merit, waiver was justified.
 
 
 3
 Petitioner National Association of Independent Television Producers and Distributors (NAITPD) opposed Hughes' request, joined by intervenor Westinghouse Broadcasting Company, CBS, and Metromedia Producers Corporation. These parties objected to the proposed waiver on four grounds: (1) that it undermined the avowed purpose of the rule, the guarantee to independent producers of a significant and ascertainable amount of air time;[4] (2) that it was unnecessary for rebroadcast of the series; (3) that FCC endorsement of the program for the reason that it was "instructive" rather than "entertaining" would involve the agency in a morass of subjective judgments for which it had formulated no standards and which it had strenuously been urged to eschew in prior rulemaking proceedings; and (4) that administrative favoritism toward programs based on quality or content posed grave First Amendment questions.[5] Hughes filed a "Reply to Comments and Oppositions" in which it asserted that the argument that the America waiver was unnecessary "ignore(d) the realities of program distribution and clearance," which dictated that "without the added incentive of a prime time access waiver, America will be unable to compete with entertainment programs for clearance by stations in early prime time."[6] Moreover, Hughes insisted that it had not "asked the Commission to make its own determination" regarding the quality or importance of the America series, but had merely asked the Commission not to "close its eyes" to the judgments of educators and critics.[7]
 
 
 4
 The FCC determined in March 1973 to hold the Hughes request in abeyance pending final resolution in Docket No. 19622 (In re Consideration of, and Possible Changes in, the "Prime Time Access Rule." )[8] No resolution had been achieved at the start of the '73-'74 television season, and thus the FCC acted upon Hughes' request and granted the waiver. By that time arrangements for broadcast of the show outside prime time hours or in lieu of network programming had been made in all but four of the fifty markets governed by PTAR. According to a condition in the Commission's order, America was broadcast with a waiver in those four metropolitan areas and according to prior arrangements in the other cities.
 
 
 5
 Pursuant to 47 U.S.C. § 402(a)[9] incorporating by reference the general review provisions of 28 U.S.C. § 2341 et seq.,[10] NAITPD now petitions this court to reverse the FCC's decision, to direct the agency to fashion an appropriate remedy to correct "specific detriment" allegedly caused by the waiver, and to set aside its order as precedent. In effect, we are asked to declare that a waiver granted for the reasons the FCC offered in this case is contrary to law, and to rule that Hughes' request for a new off-network waiver to facilitate rebroadcast of America during the '75-'76 season should be denied. Because intervening events have virtually negated the possibility that the administrative decision NAITPD challenges will recur, we find the controversy moot and decline to reach the merits.
 
 
 6
 In January 1975 the FCC issued its Second Report and Order[11] in Docket No. 19622, an interminable proceeding dedicated to consideration of possible modification of PTAR. That Report and Order produced PTAR III, a creature strikingly similar to the original rule adopted in 1970 but different in one respect critical to this lawsuit: PTAR III exempts from the three-hour per evening limitation on network programming certain species of programming, including the broad category of "documentary programs." The Commission specifically noted that America would come under this rubric,[12] obviating a waiver request to promote broadcast of the series during prime time. In April 1975 the Second Circuit upheld this aspect of PTAR III in the face of NAITPD's argument that FCC sponsorship of vaguely defined types of educational programs involves impermissibly value judgments and violates First Amendment freedoms.[13] NAITPD moved the Second Circuit to postpone the effective date of the new rule to afford adequate notice to parties who must gauge the availability of air time for their respective programs, as that court had done once before.[14] The Second Circuit has denied the motion, NAITPD v. FCC, No. 75-4021, filed June 17, 1975, and thus the waiver grant NAITPD contests here cannot recur after September 8, 1975.
 
 
 7
 Until May 27, 1975, the possibility existed that the FCC might grant a new America waiver before PTAR III took effect. On that date the Commission released a Memorandum Opinion and Order[15] rejecting a request by Time-Life Films, Inc., co-producer of the America series and current holder of the right to display it in this country, that existing prime-time limitations be waived to aid broadcast of the program before the 1975 Fall television season commenced. The Commission's decision was predicated in part on NAITPD's argument, also offered here, that precisely because of the importance, quality, and timeliness of the program, "waiver is not necessary for (its) presentation."[16] The Commission also heeded the Second Circuit's admonition that it should avoid standardless ad hoc judgments, particularly those apparently involving the discrimination of "meritorious or desirable programming."[17]
 
 
 8
 Thus the dispute between NAITPD and the Commission has ceased to be a live controversy. Neither a declaration that the waiver for the '73-'74 season was improper nor a prohibition against such decisions in the future would serve any purpose, for the owners of America have been ordered to abide by the existing off-network provision until September 8, 1975, and granted an explicit exemption from it after that date. Because the case is moot, we are without power to test the legality of the Commission's decision below. North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); Hall v. Beals, 396 U.S. 45, 49, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969). Thus, according to the mandate of United States v. Munsingwear, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), we dismiss this appeal and remand to the Commission in order that it may vacate its order.
 
 
 9
 Appeal dismissed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(d)
 
 
 [1]
 Network Television Broadcasting, 23 F.C.C.2d 382, 401-02, modified on reconsideration, 25 F.C.C.2d 318, 336-37 (1970). The rule was the result of Commission investigations of network operations dating to 1938, see generally National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943). It was based on a finding that "the public interest requires limitation on network control and an increase in the opportunity for development of truly independent sources of prime time programming." Network Television Broadcasting, 23 F.C.C.2d 382, 394 (1970). The rule was designed to remedy the problems of "centralized control" and "virtual (elimination of) needed sources of mass appeal programs competitive with network offerings in prime time," by opening up "one-half hour of additional time per evening for nonnetwork programs on affiliated stations." 23 F.C.C.2d at 394-95
 
 
 [2]
 47 C.F.R. § 73.658(k)(3) (1970). The provision reads:
 (k) Prime time access rule. (1) No television stations assigned to any of the top 50 markets in which there are three or more operating commercial television stations, shall broadcast network programs offered by any television network or networks for a total of more than 3 hours per day between the hours of 7 p. m. and 11 p. m. local time, except that in the central and mountain time zones the relevant period shall be between the hours of 6 p. m. and 10 p. m. local time.
 (3) The portion of the time from which network programing is excluded by subparagraph (1) of this paragraph may not after October 1, 1972, be filled with off-network programs; or feature films which within 2 years prior to the date of broadcast have been previously broadcast by a station in the market.
 The off-network corollary was included because of the agency's conclusion that to allow programs previously shown on a network to fill a station's quota of nonnetwork programs "would destroy the essential purpose of the rule to open the market to first run syndicated programs." 23 F.C.C.2d at 395.
 
 
 [3]
 PTAR received formal judicial approval in Mt. Mansfield Television, Inc. v. FCC, 442 F.2d 470 (2d Cir. 1970). On February 6, 1974, the Commission released its decision amending PTAR effective September 1, 1974. Prime Time Access Rules, FCC 74-80. The Second Circuit entertained challenges to the new rules and stayed their implementation in order to avoid economic injury to independent producers who had not received adequate notice of the changes. NAITPD v. FCC, 502 F.2d 249 (2d Cir. 1974). The Commission proceeded to reopen consideration of the propriety of changing the existing rules, Further Notice Inviting Comments, FCC 74-756, released July 18, 1974, and announced a new general policy for waivers of the rules during the '74-'75 season, "Memorandum Opinion and Order In the Matter of Waivers of the prime time access rule," FCC 74-974, released September 13, 1974. Finally, on January 17, 1975, the Commission issued its final Report and Order in Docket No. 19622, "In the Matter of Consideration of the operation of, and possible changes in, the prime time access rule," announcing the decision "to return to PTAR I, the original rule adopted in 1970, except for the codification of certain waiver practices which have grown up under it (sports runovers, network news following an hour of local news, time-zone differences, etc.), and except for network or off-network programming which is designed for children, public affairs or documentary programs, and different provisions as to feature films." 50 F.C.C.2d 829, 835
 The Second Circuit affirmed the Commission's January 1975 Report and Order, now designated "PTAR III," and specifically rejected challenges to the exemption accorded documentary programs, but remanded the case for consideration of three aspects of the rules not germane to this litigation. NAITPD v. FCC, 516 F.2d 526 (2d Cir., filed April 21, 1975). The Commission responded with a Third Report and Order, FCC 75-542, released May 14, 1975.
 
 
 [4]
 In adopting the rule the agency stated:
 . . . Off-network programs may not be inserted in place of the excluded network programming; to permit this would destroy the essential purpose of the rule to open the market to first run syndicated programs.
 
 
 [23]
 F.C.C.2d 382, 395 (emphasis added)
 
 
 [5]
 NAITPD pointed in particular to the Supreme Court's admonition against attempts to apply disparate regulatory standards to "art" and "entertainment" in Winters v. New York, 333 U.S. 507, 510, 68 S.Ct. 665, 667, 92 L.Ed. 840 (1948):
 We do not accede to appellee's suggestion that the constitutional protection for a free press applies only to the exposition of ideas. The line between the informing and the entertaining is too elusive for the protection of that basic right.
 NAITPD reasoned that if this delineation intolerably burdens the First Amendment interests of those who sell entertainment, it is equally impermissible when the consequence is favoritism to the propounders of informational material.
 
 
 [6]
 JA at 34
 
 
 [7]
 Id. at 35
 
 
 [8]
 See note 3 supra
 
 
 [9]
 47 U.S.C. § 402(a) (1970) provides:
 (a) Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 19A of Title 5.
 Chapter 19A of Title 5 was repealed by Pub.L.No. 89-554, § 8(a), Sept. 6. 1966, 80 Stat. 632. Review of orders of the FCC and certain other federal agencies is not governed by Chapter 158 of Title 28, 28 U.S.C. § 2341 et seq. (1970).
 
 
 [10]
 28 U.S.C. § 2342 (1970) provides in pertinent part:
 The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of
 (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47; * * *
 
 
 [11]
 FCC 75-67, released January 17, 1975
 
 
 [12]
 In Note 2 to Appendix A of its Second Report and Order in Docket No. 19622, released January 17, 1975, the Commission offers the following definition of "documentary programs":
 programs which are non-fictional and educational or informational, but not including programs where the information is used as part of a contest among participants in the program, and not including programs relating to the visual entertainment arts (stage, motion pictures or television) where more than 50% of the program is devoted to the presentation of entertainment material itself.
 This definition clearly includes the America series within its ambit. The Commission itself articulated this point in paragraph 33 of the Second Report and Order; reminded by the Second Circuit that it should avoid "ad hoc rulings as to whether particular programs come within the exemption categories," the Commission announced somewhat more cautiously:
 (I)t appears that licensees could reasonably regard . . . America . . . as (a) documentary (program), and therefore on that basis (it) may be shown under the new rule starting September 8, 1975.
 "Memorandum Opinion and Order In the Matter of Four requests for waiver of the 'off-network' restrictions of the prime time access rule (§ 73.658(k) of the Commission's Rules) for particular programs," FCC 75-574, released May 27, 1975, at 8 n.7. See NAITPD v. FCC, 516 F.2d 526, at 540-541 (2d Cir., filed April 21, 1975).
 
 
 [13]
 NAITPD v. FCC, No. 75-4021 (2d Cir., filed April 21, 1975)
 
 
 [14]
 NAITPD v. FCC, 502 F.2d 249 (2d Cir. 1974)
 
 
 [15]
 FCC 75-574, released May 27, 1975
 
 
 [16]
 Id. at 7
 
 
 [17]
 Id. at 8 n.7