*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0188P (6th Cir.)
File Name: 02a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROY COOLEY, M.D.; M. W.
EL-NACHEF, M.D.,
     *Plaintiffs-Appellants,*

     *v.*

JENNIFER GRANHOLM,
Attorney General of the State
of Michigan; DOUGLAS
MACK, M.D., Chairperson;
MICHIGAN BOARD OF
MEDICINE,
     *Defendants-Appellees.*

No. 01-1067

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-75484—Nancy G. Edmunds, District Judge.

Argued: May 2, 2002

Decided and Filed: May 29, 2002

Before: MERRITT, SUHRHEINRICH, and GILMAN,
Circuit Judges.

Accordingly, on grounds of mootness and ripeness, we conclude that the issues presented are not justiciable and vacate the judgment below.

---

## COUNSEL

---

**ARGUED:** Robert A. Sedler, Detroit, Michigan, for Appellants. Thomas R. Wheeker, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Robert A. Sedler, Detroit, Michigan, Lisa L. Dwyer, Detroit, Michigan, for Appellants. Thomas R. Wheeker, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

---

## OPINION

---

MERRITT, Circuit Judge. In this physician-assisted suicide or euthanasia case, questions of justiciability and questions of the constitutionality of Michigan euthanasia legislation are raised. The District Court held that Michigan's recently enacted anti-euthanasia statute does not violate the substantive due process clause of the Fourteenth Amendment. The case raises case-or-controversy questions of mootness and ripeness for adjudication and, on the merits, an issue of whether, and under what circumstances, a physician may administer lethal medications to terminally-ill patients who are subject to "unbearable and irremediable suffering."

There are several types of euthanasia, including (1) the refusal of medical treatment that would prolong life by a competent, terminally ill patient, a right protected by substantive due process recognized in *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990) (holding that no such constitutional right exists for an incompetent rather than a competent patient); (2) so-called "double effect" euthanasia, where a terminally ill patient in severe pain is given pain medication which relieves pain but also cuts short the patient's life; and (3) "physician assisted suicide" which kills the patient through means other than the withdrawal of

permissible under Michigan law — withdrawal of life support and "double effect" euthanasia — are unworkable for such patients and do not allow the physician sufficient leeway to carry out the patient's euthanasia request.

It is conceivable that such a situation could perhaps arise. *See*, *Case of Pretty v. United Kingdom*, Application 2346/02 (April 29, 2002) (decided by the European Court of Human Rights, an interesting case holding that a terminally ill, mentally competent woman suffering irremediable pain with motor-neuron disease has no constitutional right to assisted suicide under the European Convention for the Protection of Human Rights and Fundamental Freedoms). Nevertheless, without a current patient with such characteristics, we hesitate to lay down abstract principles governing euthanasia.

In *Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726 (1998), the Supreme Court held that a challenge to a federal regulation was not ripe. The Court reviewed "whether delayed review would cause hardship" and "whether the courts would benefit from further factual development of the issues." The case was premature because the plaintiff "will have an ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain." Likewise here, without the focus that a particular patient's situation provides, we cannot be sure whether the justification of euthanasia based on withdrawing life support and "double effect" medication is present and would provide a legal basis for euthanasia under the Michigan law. Neither can we be sure whether outside pressures have been brought to bear or some other abuse is present. As the Court said in *Texas v. United States*, 523 U.S. 296 (1998), in which it concluded that a Voting Rights Act claim was not ripe: "a claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (Quoting *Thomas v. Union Carbide*, 473 U.S. 568, 581 (1985)).

life support or "double effect" euthanasia. Michigan law allows the first two forms of euthanasia but outlaws the third.

The two plaintiffs, Cooley and El-Nachef, are physicians who claimed that they were harmed by the new Michigan statute enacted in response to wide-spread publicity generated by several instances of physician-assisted suicide in Michigan. *See, e.g., People v. Kevorkian*, 527 N.W.2d 714 (Mich. 1994). The legislature amended Michigan law to criminalize the action of any person who

(A) Provides the means by which the individual attempts to kill himself or herself or kills himself or herself.

(B) Participates in an act by which the individual attempts to kill himself or herself or kills himself or herself.

(C) Helps the individual plan or attempt to kill himself or herself or kills himself or herself.

Mich. Comp. Laws Ann. § 750.329(a), effective September 1, 1998.

The plaintiffs argue that we should invalidate this statute as it applies to doctors who help patients kill themselves if the patient is (1) mentally competent, (2) terminally ill, and (3) "suffering unbearable and irremediable pain."

The District Court concluded, and the parties do not appear to contest the fact that Michigan law permits so-called "double effect" euthanasia. The District Court made the point as follows:

Michigan law does not prohibit doctors from prescribing medication which has the "double effect" of relieving pain while also hastening death or substantially increasing the risk of death. The Michigan Dignified Death Act, Mich. Comp. Laws Ann. §§ 333.5651-.5661, expressly provides that a physician is immune from civil

or administrative liability for prescribing a narcotic drug in good faith and with the intention to alleviate a patient's pain. Mich. Comp. Laws Ann. § 333.5658. The Act sets forth the intent of the Legislature as follows:

> [T]he legislature recognizes that a well-considered body of common law exists detailing the relationship between health care providers and their patients. This act is not intended to abrogate any part of that law. *This act is intended to increase terminally ill patients' awareness of their right to make decisions to receive, continue, discontinue, or refuse medical treatment.* It is hoped that by doing so, the legislature will encourage better communication between terminally ill patients and health care providers to ensure that a terminally ill patient's final days are meaningful and dignified.

*Id*. § 333.5652 (emphasis added). Thus, the Act expressly protects the right to receive medical treatment, including the right to pain relief medication. Further, palliative care which may have the foreseen but unintended effect of hastening a patient's death does not constitute criminal assistance to suicide. The Michigan statute criminalizing assisted-suicide applies only when there is an intent to kill, not when there is an intent to relieve pain. Mich. Comp. Laws Ann. § 750.329a.

District Court opin. pp. 16-17.

In the present case, the two doctors have not clearly identified any current patient or any future patient who is terminally ill and "suffering irremediable pain" and whose death may not be hastened legally by withdrawing artificial life support or by administering morphine or other pain medication. It is unclear from the record how, or in what cases, Michigan law would distinguish between (1) withdrawal of life support and "double effect" euthanasia through pain medication for patients suffering "irremediable pain" — which are permitted — and (2) euthanasia for such patients through illegal physician-assisted suicide.

Counsel for the two doctors now advise us that Dr. Cooley has retired and concede that the case is moot as to him. They point out that Dr. El-Nachef has moved to California, but will return to Michigan to practice sometime in the future if he can find a suitable job. Counsel does not concede mootness in Dr. El-Nachef's case.

In light of this situation, the case is both moot and not ripe for consideration because neither doctor has an immediate concrete interest in the outcome of the case or a patient who is suffering "unbearable and irremediable pain." With respect to mootness, the current situations in which the doctors find themselves — neither practices medicine in Michigan any longer — means that the case has completely lost "its character as a present live controversy of the kind that must exist if [the Court is] to avoid advisory opinions on abstract propositions of law," *Hall v. Beals*, 396 U.S. 45, 48 (1969). They have no "legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

In addition, even if the case were not moot because of the status of the doctors, it is doubtful that it could pass the ripeness test. The record does not clearly describe any competent, terminally ill patient "suffering irremediable pain" whose euthanasia request could not be met by withdrawal of life support or pain medication or some combination of the two. The case is presently hypothetical and, as the Supreme Court observed in *Cruzan* about euthanasia, "it is the better part of wisdom not to attempt, by any general statement, to cover every possible phase of the subject." 497 U.S. 278.

The two doctors contend that there are unusual patients with Lou Gehrig's disease and certain cancers who are (1) mentally competent, (2) terminally ill, and (3) enduring "unbearable suffering with irremediable pain." They argue that those patients should be entitled to choose euthanasia as a constitutional right under substantive due process. They argue that the recent Michigan law criminalizing physician-assisted suicide is unconstitutional as applied to such patients. They further argue that the two forms of euthanasia