December 15, 1978

## 78-65   MEMORANDUM FOR THE ATTORNEY GENERAL

### National Security Mail Covers—Constitutional Challenge—Federal Bureau of Investigation (39 CFR 233.2(d)(2)(ii))

You have asked us to review the effect of District Judge Whipple's opinion on remand in *Paton* v. *LaPrade*, 469 F. Supp. 773 (D. N.J. 1978) on the current use of mail covers in cases being investigated by the Federal Bureau of Investigation (FBI) under the Foreign Intelligence and Foreign Counter-Intelligence guidelines. We believe that the opinion, standing alone, requires no change in present practice. A Supreme Court decision to the same effect would, of course, require the termination of any national security mail covers authorized under existing Postal Service regulations.

The plaintiff, Lori Paton, sued the FBI in 1973 seeking, *inter alia*, damages for injuries caused by the interception of a letter she had written to the Socialist Workers Party (SWP). Her letter was intercepted under an FBI-authorized mail cover. She further sought a declaration that the postal regulation under which the SWP mail cover was conducted, 39 CFR § 233.2(d)(2)(ii) (1977), was unconstitutional.[1]

The complaint was originally dismissed. *Paton* v. *LaPrade*, 382 F. Supp. 1118 (D. N.J. 1974). On appeal the Third Circuit held that the complaint stated an actionable claim for damages and Paton had standing to challenge the constitutionality of the mail cover regulation, 524 F. (2d) 862 (3d Cir. 1975). On remand Judge Whipple declared the regulation unconstitutional on its face. He reached his conclusion as follows: First, the SWP mail cover, as authorized by the challenged regulation, infringed on political associational freedoms

---

[1] The regulation reads:

"(2) The Chief Postal Inspector, or his designee, may order mail covers under the following circumstances:

\* \* \*

(ii) When written request is received from any law enforcement agency wherein the requesting authority stipulates and specifies the reasonable grounds that exist which demonstrate the mail cover is necessary to (A) protect the national security . . . ."

protected by the First Amendment. *Buckley* v. *Valeo*, 424 U.S. 1 (1976); *NAACP* v. *Alabama*, 357 U.S. 449 (1958). Second, because the regulation had that effect, it had to pass muster under "strict" constitutional scrutiny; that is, the regulation had to be justified by a compelling Government interest that was, in fact, served by its operation. *Buckley* v. *Valeo, supra,* 424 U.S. at 64. Finally, Judge Whipple concluded that the Government had demonstrated no compelling interest because of the vagueness of the term "national security" and the consequent "overbreadth" of the regulation.

For purposes of this memorandum we assume that Judge Whipple might have properly concluded that the challenged regulation as applied in Ms. Paton's case was not justified by any compelling Government interest, and therefore unconstitutional. We believe that Judge Whipple's analysis of the regulation was incorrect because of his failure to consider the constitutionality of the regulation as applied.

Judge Whipple found the challenged postal regulation overbroad because it was "susceptible to impermissible applications" (*see* 524 F. (2d) at 779) and not "susceptible to a narrowing construction," (524 F. (2d) at 782) which could withstand strict scrutiny. If the term "national security" were confined to cases in which there was some foreign power involvement, we believe the regulation would be justified by a compelling Government interest. This conclusion is compatible with the distinction drawn by the Supreme Court in *United States* v. *United States District Court,* 407 U.S. 297, 322 and n. 20 (1972), between domestic security cases and cases involving foreign powers or their agents. The Court held that a warrant was required in a domestic security case not involving a foreign power. Because the Third Circuit recognized the Government's compelling interest in the conduct of foreign affairs and held that the President has power to conduct warrantless electronic surveillance to gather foreign intelligence information, *United States* v. *Butenko,* 494 F. (2d) 593 (3d Cir. 1974), we think it doubtful that the Third Circuit would uphold Judge Whipple's decision as written.

Even assuming the SWP mail cover in this case was unconstitutional, Judge Whipple's analysis of the regulation on its face adjudicated questions not requisite to the protection of any party's rights. Had he first addressed the constitutionality of the regulation as applied, he could have afforded the plaintiff complete relief without deciding issues not presented by the facts. The Supreme Court's hesitancy in resorting to overbreadth analysis counsels such an approach: "[W]hen considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a [government] regulatory program," *Erznoznik* v. *City of Jacksonville,* 422 U.S. 205, 216 (1975). The Court has refrained, for example, from relying on the asserted overbreadth of breach-of-the-peace statutes to overturn petitioners' criminal convictions in cases in which such convictions were themselves unconstitutional under the First Amendment or unsupported by any evidence. *See, Broadrick* v. *Oklahoma,* 413 U.S. 601, 613-14 (1978), and cases cited therein. The Supreme Court, moreover, has resisted application of overbreadth analysis in cases involving "statutes regulating conduct in the

shadow of the First Amendment, but doing so in a neutral, noncensorial manner.'' *Broadrick* v. *Oklahoma, supra*, at 614. Like the statute upheld in *Broadrick*, the regulation challenged by Paton is "neutral" and "noncensorial," although it clearly implicates First Amendment liberties. However, unlike the *Broadrick* statute, the postal regulation does not proscribe any conduct. Paton was free to engage in any "speech" she desired; the Government made a record of her "speech," it did not prohibit it. Thus, her case presents a more compelling circumstance for the court to avoid overturning the challenged regulation for overbreadth.

Because we believe Judge Whipple's broad conclusion is incorrect, we think it would be lawful to continue to approve and implement mail covers under the existing FBI Foreign Intelligence and Counter-Intelligence guidelines. This conclusion rests, of course, on the assumption that the District Court will not enjoin the FBI or the Postal Service.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*